**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Loarn Anthony BISWELL, Defendant-
Appellant.**

**No. 464–70.**

United States Court of Appeals,
Tenth Circuit.

May 18, 1971.

Victor R. Ortega, U. S. Atty., and John A. Babington, Asst. U. S. Atty., filed a brief for plaintiff-appellee.

Warren F. Reynolds, Easley & Reynolds, Hobbs, N. M., filed a brief for defendant-appellant.

Before CLARK,* Associate Justice, HILL and McWILLIAMS, Circuit Judges.

Mr. Justice CLARK:

Appellant was indicted on six counts for violating the United States' firearms laws, and was found guilty by a jury on the first count, i. e. dealing in firearms as defined in the Act, 26 U.S.C. § 5845, without having paid the special occupational tax required by 26 U.S.C. § 5801, in violation of 26 U.S.C. §§ 5861 and 5871.

He contends, *inter alia*, that the Act is unconstitutional because it provides for the search of non-public areas of business premises without a search warrant. Such a search without a warrant was made of appellant's premises, and guns coming within the terms of the Act were

* Associate Justice, United States Supreme Court, Retired, sitting by designation.

found there. The District Court rejected this contention and sentenced the appellant upon the verdict of guilty on Count One to two years' imprisonment. We find the conviction defective on Fourth Amendment grounds, and, therefore, do not pass upon the other issues raised.

## I.

Appellant, a former police officer, had been operating a pawn shop in Hobbs, New Mexico for 12 years. On February 4, 1970, Detective Fowler of the Hobbs Police Department and Special Investigator Hupp of the United States Treasury Department paid a routine visit to appellant's shop. Hupp requested inspection of appellant's gun storerooms, and appellant inquired if Hupp had a search warrant. Hupp said "no" but advised that the Federal Gun Control Act authorized it and showed appellant a copy of the law. 18 U.S.C. § 923(g). Appellant then "said okay" adding "[i]f that is the law, I guess it is all right." Hupp found two sawed off rifles in the gun room which were of the length covered by the Act. The guns had been pawned. Appellant had a federal license for dealing in sporting rifles etc., but had none required by the Act for dealers in gangster-type weapons—sawed off shotguns and rifles, machine guns etc. Nor were the sawed off rifles registered.

Appellant was indicted, as we have said, on six counts. The first was for wilfully and knowingly dealing in firearms as defined by the Act without having paid the special occupational tax required; the second and third for possessing the guns, neither of which were registered; the fourth and fifth for possessing guns not identified by serial numbers as required by the Act; and the last count was for not maintaining proper records with reference to his guns and ammunition. 18 U.S.C. § 923(g). The sixth count was severed and is awaiting trial.

Prior to trial the appellant moved to suppress the evidence as to the rifles because they were obtained by an illegal search and seizure. In this connection he claimed that the authorization to search under the Act was invalid and that his acquiescence to the search was not voluntary. He also moved to dismiss the first five counts because compliance with the requirements of the Act was violative of appellant's privilege against self-incrimination. Further he attacked the classification of the two single shot rifles as "firearms" under the Act as unreasonable and arbitrary; and finally, that the jury findings were inconsistent and the sentence imposed amounted to cruel and unusual punishment. Since we sustain the first contention, and it disposes of the case, we do not find it necessary to pass upon the other points raised by appellant.

## II.

The basic outlines governing the application of the Fourth Amendment's requirement of a warrant and prohibition against unreasonable searches and seizures was discussed rather fully by Mr. Justice White in Camara v. Municipal Court, 387 U.S. 523, 528–529, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967). There it was said that the "governing principle * * * except in certain carefully defined classes of cases" was that "a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." There a city ordinance gave authorized employees of City departments the right to enter, at reasonable times, any building, structure etc. in the City to perform any duty imposed upon them by the Municipal Code. The refusal of the occupant to permit the entry was made a criminal offense. The Court found the ordinance defective in not requiring a warrant holding "that administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment. * * *" At 534, 87 S.Ct. at 1733. In a companion case, See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) this

rule was extended to commercial premises. The Court pointed out that it "has not had occasion to consider the Fourth Amendment's relation to this broad range of investigations" (regulatory laws) (at 544, 87 S.Ct. at 1739) and did not "question such accepted regulatory techniques as licensing programs which require inspections prior to operating a business or marketing a product." At 546, 87 S.Ct. at 1741.

Such an occasion arose three years later in Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). There the Court struck down a search made without consent under a federal statutory scheme similar to the one involved here, regarding the federal retail liquor dealer's occupational tax. 26 U.S.C. § 5121(a). The statute, 26 U.S.C. § 5146(b), provided:

> "The Secretary or his delegate may enter during business hours the premises * * * of any dealer for the purpose of inspecting or examining any records or other documents required to be kept * * * under this chapter * * *."

Section 7606(a) further provided that "The Secretary or his delegate may enter, in the daytime, any building or place where any articles or objects subject to tax are made, produced, or kept, so far as it may be necessary for the purpose of examining said articles or objects." The Court, through Mr. Justice Douglas, said:

> "Where Congress has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." At 77, 90 S.Ct. at 777.

### III.

The Federal Gun Control Act has a provision which is almost identical to that involved in Colonnade, supra. The Section, 18 U.S.C. § 923(g), provides inter alia:

> "The Secretary may enter during business hours the premises (including places of storage) of any firearms or ammunition * * * dealer * * * for the purpose of inspecting or examining (1) any records or documents required to be kept * * * and (2) any firearms or ammunition kept or stored by such * * * dealer * * *."

The government would distinguish Colonnade because there the agents used force and broke down a door to enter the liquor storeroom. It argues that here the appellant consented. We cannot agree. The prosecutor puts too much reliance on the appellant's "[i]f that is the law, I guess it is all right." This "consent" is similar to that found ineffective in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), where Mr. Justice Stewart in writing for the Court said:

> "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent, was in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. * * * When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." At 548–550, 88 S.Ct. at 1792.

We, therefore, conclude that Colonnade, See, and Bumper, supra, are conclusive of this issue and we are obliged to hold that the statute insofar as it authorizes entry by the Secretary or his delegate without a warrant and without the owner's permission is unconstitutional, and that the evidence seized thereby must be suppressed. The judgment is, therefore, reversed.