UNITED STATES of America,
Appellee,

v.

WEDGEWOOD, INC., et al., Defendants-
Appellants.

No. 71–1099.

United States Court of Appeals,
First Circuit.

March 24, 1972.

Philip S. Nyman, Lowell, Mass., with whom Brian J. Sullivan, Lowell, Mass., was on brief, for appellants.

Joseph L. Tauro, U. S. Atty., George V. Higgins, Asst. U. S. Atty., with whom

James N. Gabriel, U. S. Atty. and Alan R. Hoffman, Asst. U. S. Atty. were on brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

## SUBSTITUTED OPINION OF THE COURT

McENTEE, Circuit Judge.

This is an appeal by one corporate and two individual defendants from convictions for possession of altered liquor in violation of 26 U.S.C. § 5301(c) (4) (1970). Wedgewood, Inc. is a Massachusetts corporation doing business as the Celebrity Lounge in Lowell, Massachusetts. Perron is the owner and manager of Wedgewood; Bello is an employee with some managerial duties. On February 25, 1970, Internal Revenue agents of the Alcohol, Tobacco and Firearms Division entered the Lounge and inspected a number of bottles of liquor. As a result of this inspection, the contents of ten bottles were found to have been altered, and the defendants were indicted.

The indictment charged the three defendants jointly in each of two counts. At trial the court directed acquittals on Count I, which charged violations of 26 U.S.C. § 5301(c) (2).[1] The jury returned verdicts of guilty on Count II, which charged violations of 26 U.S.C. § 5301(c) (4).[2] The threshold question on appeal is the validity of Count II of the indictment in light of its failure to allege "knowing" possession and the individual defendants' status as agents of the corporation.[3]

[1] Section 5301(c) (2) was read by the district court as referring only to adulteration by the addition of other distilled spirits. Since the evidence established only alteration, but not the addition of distilled spirits, the court directed acquittals of all three defendants on this count.

[2] The notices of Judgment and Commitment, signed by the district court, recorded convictions on both counts. This was clearly an oversight. The record shows convictions on Count II only, and the sentences imposed did not exceed the statutory maximum for a single offense.

[3] Count II reads as follows:
"That on or about February 25, 1970, at Lowell in the District of Massachusetts, WEDGEWOOD, INC., a Massachusetts corporation doing business as

At the close of the government's evidence Perron and Bello moved for acquittals on Count II on the ground that the indictment was defective. While a motion for acquittal may not be the most expeditious way to attack the validity of an indictment, the failure of an indictment to charge an offense "shall be noticed by the court at any time during the pendency of the proceeding." Rule 12(b) (2), Fed.R.Crim.P. *See also* Rule 34, Fed.R.Crim.P. The trial court denied defendants' motions, orally added "knowingly" to the indictment,[4] and later instructed the jury that in order to convict, it had to find the individual defendants in knowing possession.

Section 5301(c) imposes criminal liability on "[any] person who sells, or offers for sale, distilled spirits, or agent or employee of such person," if that person violates any of the four enumerated subsections. The provision does not include a scienter requirement, but imposes strict liability. Pursuant to 26 U.S.C. § 5301(d),[5] violations of the section can be punished only pursuant to the penalty provision, 26 U.S.C. § 5606, which provides:

"Whoever violates any provision of section 5301, or of any regulation issued pursuant thereto, or the terms or conditions of any permit issued pursuant to the authorization contained in such section, *and any officer, director, or agent of any corporation who knowingly participates in such violation,* shall, upon conviction, be fined not more than $1,000, or imprisoned not more than 1 year, or both, for each such offense." (Emphasis added.)

Perron and Bello contend that, since they were corporate agents, they can be punished only for "knowing participation," and that consequently the indictment was fatally defective for failure to include all the essential elements of the offense charged.

The individual defendants, however, misconstrue the intent of the legislation and misread the language of the indictment. Sections 5301(c) and 5606 impose strict liability on persons, be they individuals or corporations, who sell or offer liquor for sale if they violate the provisions of § 5301(c), regardless of scienter. The statute specifically does not relieve one merely because, in selling or offering to sell, he happens to be an "agent or employee" of the owner. The apparent purpose of the emphasized portion of § 5606, *supra*, is to provide that persons who are corporate officers, directors, or agents and who do not themselves sell or offer for sale but aid and abet a corporation that does, may not be punished if they lack scienter. However, we are not concerned here with the scope of that provision because

---

Celebrity Lounge, and GEORGE A. PERRON and MANUEL J. BELLO, agents of said corporation, the defendants herein, being persons who sell and offer for sale distilled spirits, did possess ten (10) liquor bottles, more or less, the original contents of which had been altered or increased, in violation of the provisions of paragraph (3) of Title 26, United States Code, Section 5301(c). In violation of Title 26, United States Code, Section 5301(c) (4)."

4. The bench conference on defendants' motions for acquittal went as follows:
"Mr. DiAdamo [defense counsel]:
. . . My basis is [26 U.S.C. §] 5606.
"Mr. Daniels [defense counsel]: Whoever knowingly.

"THE COURT: That is a question of fact for the jury.
"Mr. DiAdamo: Your Honor please, it is not a question—
"THE COURT: I know what your defense is. They knew nothing about it. That is for the jury. You see, these fellows down in the office, downstairs, don't know how to draw an indictment. You can't find the word 'knowingly' there, can you?
"Mr. DiAdamo: No, your Honor.
"THE COURT: Well, I am going to put it in, and I will put in willfully, too, if you want me to. Do you know what 'willfully' means? I'll bet you don't. 'Knowingly' I will put in there."

5. 26 U.S.C. § 5301(d) provides: *"Penalty.* —For penalty for violation of this section, see section 5606."

the individual defendants were charged directly as "persons who sell and offer for sale distilled spirits." The indictment's reference to them as agents of the corporation was merely descriptive, and the fact that they happened to be officers or agents does not reduce their direct liability.[6] We find the indictment clear and the evidence sufficient to support it.[7]

Defendants Perron and Bello moved pretrial to suppress the bottles of adulterated liquor on the grounds of an illegal search and seizure. These motions were denied, and defendants renew their claim of unconstitutional intrusion on appeal. On February 25, at approximately 2 p. m., three agents entered the barroom of the Celebrity Lounge. Neither Perron nor Bello was on the premises. The agents approached a barmaid, identified themselves, told her the purpose of their visit, and proceeded to test a number of bottles taken from behind the bar. She neither objected nor explicitly consented to the inspection. While the agents were testing the liquor, and about one hour after their arrival, Perron entered the Lounge. An agent identified himself, told Perron the purpose of the visit, and stated that the inspection was authorized. Perron did not object to continuation of the testing procedures or the seizure of twenty-one bottles, ten of which were later determined to be adulterated.[8]

Entry and inspection by the agents was made without a warrant or express consent pursuant to statutory provisions which give the Secretary of the Treasury or his delegate broad authority to enter and inspect the premises of liquor dealers. 26 U.S.C. §§ 5146(b),[9] 5301(a),[10] and 7606(a).[11] Defendants argue, these sections notwithstanding, that consent is constitutionally required for warrantless inspections where no exigent circumstances exist.

---

6. We may agree that the court's informal insertion of the word "knowingly" with respect to these defendants when it sent the case to the jury would have been an improper amendment of the indictment, had it been necessary to amend the indictment. Significant amendments of indictments can be made only by the grand jury. Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). However, as no amendment was required, the trial court merely gave the defendants an extra bonus of which they cannot complain.

7. As a consequence of this holding, there is no need to reach defendants' contention that the evidence of scienter was insufficient.

8. Defendants argue Perron could not have objected because the testing was completed when he entered the premises. The evidence clearly establishes that the testing was still in progress when he entered.

9. 26 U.S.C. § 5146(b) provides:
   "(b) *Entry of premises for inspection.* —The Secretary or his delegate may enter during business hours the premises (including places of storage) of any dealer for the purpose of inspecting or examining any records or other documents required to be kept by such dealer under this chapter or regulations issued pursuant thereto and any distilled spirits, wines, or beer kept or stored by such dealer on such premises."

10. 26 U.S.C. § 5301(a) provides, in pertinent part:
    "(a) *Requirements.*—Whenever in his judgment such action is necessary to protect the revenue, the Secretary or his delegate is authorized, by the regulations prescribed by him and permits issued thereunder if required by him—
    (2) to require, of persons manufacturing, dealing in, or using any such containers, the submission to such inspection, the keeping of such records, and the filing of such reports as may be deemed by him reasonably necessary in connection therewith.
    Any requirements imposed under this section shall be in addition to any other requirements imposed by, or pursuant to, law and shall apply as well to persons not liable for tax under the internal revenue laws as to persons so liable."

11. 26 U.S.C. § 7606(a) provides:
    "(a) *Entry during day.*—The Secretary or his delegate may enter, in the daytime, any building or place where any articles or objects subject to tax are made, produced, or kept, so far as it may be necessary for the purpose of examining said articles or objects."

The Supreme Court, in Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) held that the fourth amendment's restrictions against unreasonable searches were applicable to administrative code-enforcement inspections of personal residences, and in the companion case of See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), this holding was extended to similar inspections of commercial property. The *See* decision, however, did not question "such accepted regulatory techniques as licensing programs which require inspections prior to operating a business or marketing a product," but stated:

"Any constitutional challenge to such programs can only be resolved, as many have been in the past, on a case-by-case basis under the general Fourth Amendment standard of reasonableness." 387 U.S. at 546, 87 S. Ct. at 1741.

Three years later, in the case of Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), the Court faced the issue with respect to liquor inspections. In *Colonnade* a federal agent, in the course of inspecting a catering establishment, requested that the lock on a storeroom be opened. The request was refused, whereupon the agent broke the lock, entered, and removed several bottles of liquor. The liquor licensee petitioned for the return and suppression of the seized evidence. The Court, acknowledging the long history of official regulation and supervision of the liquor industry, stated that Congress had "broad power to design such powers of inspection under the liquor laws as it deems necessary to meet the evils at hand." 397 U.S. at 76, 90 S.Ct. at 777. In other words, the fourth amendment standard of reasonableness applies to liquor inspections, but in this unique area Congress has great leeway to define what conduct is reasonable. The Court examined care-

fully the Congressional design, in which the provisions authorizing administrative searches, 26 U.S.C. §§ 5146(b) and 7606(a), are linked with a provision penalizing refusal to permit such searches, 26 U.S.C. § 7342, which states that

"Any owner of any building or place, or person having the agency or superintendence of the same, who refuses to admit any officer or employee of the Treasury Department acting under the authority of section 7606 (relating to entry of premises for examination of taxable articles) or refuses to permit him to examine such article or articles, shall, for every such refusal, forfeit $500."

Borrowing a principle of statutory construction from Frank v. Maryland, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), the Court held that § 7342 is the exclusive sanction for refusal, and that forcible entry despite the refusal of Colonnade's president was accordingly not authorized by the statute.[12]

The present case differs from *Colonnade* in that here defendants neither "refuse[d] to admit any officer" nor "refuse[d] to permit him to examine [the liquor bottles]." Manifestly, they could not have been penalized under § 7342. As to them, § 7342 could hardly have been the exclusive sanction, since it was no sanction at all. But by the same token, § 7342 was no bar to completing the search.

In urging the broader position that an administrative search without consent in the constitutional sense is violative of the statute, defendants would have us forget that it is indeed a statute we are interpreting, and, as we have noted, a statute in a unique field where the Court has recognized an expanded power to regulate. To add to § 5146(b) or to § 7606(a) a requirement that the officer obtain consent before an inspection would engraft a wholly new requirement foreign to the language and purpose of those provisions. Similarly, to accord to

12. The three dissenting Justices construed the legislation as authorizing such searches when admission was refused, and therefore argued that the seizure was legal.

§ 7342, in terms a penalty provision, broader scope in limiting searches than in imposing penalties would create a patent incongruity.

Nothing in United States v. Biswell, 442 F.2d 1189 (10th Cir.), cert. granted, 404 U.S. 983, 92 S.Ct. 445, 30 L.Ed.2d 366 (1971), cited by defendants, persuades us to the contrary. *Biswell* held unconstitutional a federal firearms inspection statute to the extent that it authorized entry without a warrant or consent. Despite its heavy reliance on *Colonnade,* the *Biswell* court eschewed the statutory reasoning employed in that case. And insofar as *Biswell* announced a rule of constitutional law regarding administrative searches under licensing programs, that rule cannot be applied here in the face of the Supreme Court's insistence that "As respects [the liquor] industry . . . Congress has broad authority to fashion standards of reasonableness for searches and seizures." Colonnade Corp. v. United States, *supra* 397 U.S. at 77, 90 S.Ct. at 777. We conclude that the search in the present case was authorized under the statute and that the statute is constitutional. See United States v. Hofbrauhaus of Hartford, Inc., 313 F.Supp. 544 (D.Conn. 1970).

Defendants' remaining contentions can be disposed of quickly. Bello alleges that the prosecution wrongfully withheld evidence that he was not listed as "manager" on Wedgewood's liquor license. There is absolutely no indication that this information was suppressed. Indeed, it was part of a public record and readily available to the defense. Nor was Bello's lack of corporate title a significant fact, for the evidence established that he performed managerial duties. All three defendants allege reversible error in the court's admission of the laboratory test results which showed the liquor to be altered. A government chemist described the tests, and although he was unable to state where and when the comparative (pure) brand name samples had been produced or bot-

tled, he stated that the chemical standard for unaltered liquor allowed for slight variations. The test results were properly admitted; their accuracy was for the jury.

Affirmed.