129 N.J. Super. 219 (1974)
322 A.2d 830
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS J. McGEARY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 3, 1973.
Resubmitted for Determination May 20, 1974.
Decided July 8, 1974.
*220 Before Judges COLLESTER, LYNCH and MICHELS.
Messrs. Mayo, Lefkowitz & Shihar, attorneys for appellant (Mr. Leslie S. Lefkowitz on the brief).
*221 Mr. John S. Kuhlthau, Middlesex County Prosecutor, attorney for respondent (Mr. Lawrence Silver, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by MICHELS, J.A.D.
Defendant was found guilty in the Municipal Court of the Township of Piscataway of driving while under the influence of intoxicating liquor, in violation of the provisions of N.J.S.A. 39:4-50(a). His driver's license was suspended for two years and a $200 fine imposed. He appealed to the Middlesex County Court where, after a trial de novo on the record below, he was again found guilty and the same sentence imposed. The judgment was stayed pending the outcome of an appeal to this court.
Defendant contends that reversible error was committed by allowing into evidence the inspection certificate to establish that the Breathalyzer was in proper operating order, without requiring the State Police coordinator who actually inspected the instrument to testify, and that in the absence of evidence of the results of the Breathalyzer test there was insufficient evidence to support a conviction of driving under the influence of alcohol in violation of the provisions of N.J.S.A. 39:4-50(a).
We are satisfied that there was sufficient credible evidence in the record to support the finding of guilt without considering the result of the Breathalyzer test. See State v. Johnson, 42 N.J. 146, 157-162 (1964). Defendant was observed operating his vehicle in an erratic manner. In fact, his vehicle was observed crossing the center lane going into the oncoming lane of traffic and back into the proper lane again. When defendant was stopped by the police officers a strong odor of alcohol was detected on his breath, and he had difficulty finding his driver's license in his wallet until it was pointed out to him by the officers. When defendant was asked if he had been drinking, he responded in the affirmative and in fact stated, in response to a question as to *222 how much he had been drinking, "too much." Moreover, defendant did not even know whether he was in Piscataway or Parlin, which are ten miles apart. When he was placed under arrest and taken to the police station, where he performed various physical tests, he was unsteady on his feet and evidenced a lack of coordination. Finally, one of the experienced police officers testified that defendant was "definitely under the influence of alcoholic beverage." The evidence was overwhelming in support of his conviction without regard to the Breathalyzer reading.
The County Court judge commented that even in the absence of the Breathalyzer reading it "would have no doubt about the fact that this man had been affected and was impaired by the consumption of alcoholic beverages." The suggestion that the county judge did not find defendant guilty of violating N.J.S.A. 39:4-50(a) is completely without merit. The statement quoted above must be considered in its context. Defendant was not charged with nor was any argument made that he should be found guilty of operating a motor vehicle while his ability was impaired by the consumption of alcohol pursuant to N.J.S.A. 39:4-50(b). Obviously the trial judge was merely expressing his finding of drunken driving in the light of its legal connotation. In State v. Emery, 27 N.J. 348, 355 (1958), the Supreme Court expressly held that it is not a prerequisite to a conviction of driving under the influence of intoxicating liquor "that the accused be absolutely `drunk', in the sense of being sodden with alcohol. It is sufficient if the presumed offender has imbibed to the extent that his physical coordination or mental faculties are deleteriously affected." See also State v. Johnson, supra, 42 N.J. at 165-166; State v. Rodgers, 91 N.J.L. 212, 215 (E. & A. 1917); State v. Glynn, 20 N.J. Super. 20, 25 (App. Div. 1952); State v. Miller, 64 N.J. Super. 262, 265 (App. Div. 1960). The County Court's finding that "this man had been affected and was impaired by the consumption of alcoholic beverages" cannot reasonably be *223 interpreted to mean that defendant was merely found guilty of operating a motor vehicle while impaired by consumption of alcohol under N.J.S.A. 39:4-50(b).
The thrust of defendant's argument, that it was error for the courts below to admit into evidence the inspection certificate of the Breathalyzer instrument as a business record, is that defendant was thereby deprived of the opportunity to cross-examine the State Police coordinator as to his qualifications to test the Breathalyzer and as to the procedure followed by him in actually testing the instrument to determine whether it was in proper operating order. Defendant relies for support upon the following excerpt from the Supreme Court opinion in State v. Johnson, supra:
It is, of course, most essential, in view of the heavy impact the result can have, that proper administration of the test be clearly established before the reading is admitted in evidence. This includes full proof that the equipment was in proper order, the operator qualified and the test given correctly (as well as the fact that the defendant consented orally or in writing). * * * [42 N.J. at 171]
Defendant also argues that even if the inspection certificate is a business record within the meaning of Evid. R. 63(13), the State failed to lay a proper foundation for its admissibility under the rule, or to properly authenticate it, pursuant to Evid. R. 67. The County Court judge followed decisions of courts in the same county, wherein inspection certificates have been admitted in evidence as business records to prove that the Breathalyzer was in proper operating order. Other courts have accepted inspection certificates as proof of this essential fact. See, e.g., State v. Hudes, 128 N.J. Super. 589 (Cty. Ct. 1974). Contra, State v. Conners, 125 N.J. Super. 500 (Cty. Ct. 1973).
The Breathalyzer is sufficiently established and accepted as a scientifically reliable and accurate device for determining the alcoholic content of the blood to admit testimony of the reading obtained upon a properly conducted test. State v. Johnson, supra, 42 N.J. at 170-171; State v. Miller, *224 supra, 64 N.J. Super. at 268. Obviously, as pointed out by the Supreme Court in State v. Johnson, supra, "it is * * * most essential * * * that proper administration of the test be clearly established before the reading is admitted in evidence," and "this includes full proof that the equipment was in proper order. * * *" However, we do not construe this language to mean that the State is limited solely to the testimony of the state trooper who inspected and tested the Breathalyzer in order to establish that it was in good operating order. Evid. R. 63(13) provides:
A writing offered as a memorandum or record of acts, conditions or events is admissible to prove the facts stated therein if the writing or the record upon which it is based was made in the regular course of a business, at or about the time of the act, condition or event recorded, and if the sources of information from which it was made and the method and circumstances of its preparation were such as to justify its admission.
"A business," as used in Evid. R. 63(13), includes "every kind of business, governmental activity, profession, occupation, calling or operation of institutions, whether carried on for profit or not." (Evid. R. 62(5)), and it is now clear that police reports with certain qualifications are admissible under Evid. R. 63(13) as an exception to the hearsay rule. See Brown v. Mortimer, 100 N.J. Super. 395, 403-404 (App. Div. 1968); Schneiderman v. Strelecki, 107 N.J. Super. 113, 119 (App. Div. 1969), certif. den. 55 N.J. 163 (1969); Sas. v. Strelecki, 110 N.J. Super. 14, 20 (App. Div. 1970). Cf. Fagan v. Newark, 78 N.J. Super. 294, 319 (App. Div. 1963).
The inspection and testing of Breathalyzer instruments in New Jersey are performed by members of the State Police pursuant to their official duties. The inspection is performed on a regular basis by a State Police coordinator (coordinator) specially trained to perform this function. See N.J.A.C. 13:51-2.2 and 13:51-3.4 adopted by the Attorney General of New Jersey, Department of Law and Public Safety, pursuant to the authority conferred by N.J.S.A. 39:4-50.3. *225 Unquestionably, the coordinator has a duty to perform an inspection and to record the results thereof honestly and accurately. The duty of truthfulness in completing the inspection certificate, certifying that the instrument "has been inspected and found to be in good operating order" is compelling.[1] In fact, it is difficult to conceive that a coordinator would violate this duty and certify that an instrument had been inspected and found to be in good operating order when in truth and in fact it had not been so found. Certainly, if the inspection of the instrument revealed that it was not operating properly and required repairs or adjustments of any kind, there is little likelihood of and absolutely no reason for the fabrication of the inspection certificate. No purpose would be served thereby. It is not only important to and in the interests of a defendant that the Breathalyzer be in proper operating order, but it is equally important to and in the interest of the State and the citizens thereof. If the instrument were not in good operating order and the readings did not accurately record the percentage of alcohol in the blood, either reporting too high a reading or too low a reading, the presumptions created by N.J.S.A. 39:4-50.1 would be incorrect and the State as well as the accused might be adversely affected. Consequently, there are compelling reasons for the coordinator to properly and honestly perform his duty in inspecting the instrument and recording the results of his inspection on the certificate. The fact certified to by the *226 coordinator here was within his personal knowledge  unlike, for example, an opinion stated by a state trooper or police officer in a police report as to the cause of an automobile accident. In the latter instance the opinion would not be admissible as part of a business record. See Brown v. Mortimer, supra; Rogalsky v. Plymouth Homes, Inc., 100 N.J. Super. 501, 506 (App. Div. 1968), certif den. 52 N.J. 167 (1968).
Accordingly, we hold that strong and convincing indicia of trustworthiness exist for the admission of the inspection certificate as a business record exception to the hearsay rule under Evid. R. 63(13). We therefore disagree with that portion of the opinion in State v. Conners, supra, holding that the inspection certificate is inadmissible "without testimony and cross-examination of the coordinator who tested the machine" as proof that the Breathalyzer was in proper working order. 125 N.J. Super. at 507. The result we reach here is supported by the persuasive language of People v. Foster, 27 N.Y.2d 47, 52, 313 N.Y.S.2d 384, 388, 261 N.E.2d 389, 391-392 (1970), wherein the Court of Appeals of New York held that a speedometer deviation record is admissible as proof of reliability of the speedometer used to clock the speed of a defendant's car without requiring the testimony of the officer who actually tested the speedometer under the business entry exception to the hearsay rule if a proper foundation is laid. There, the court stated:
It appears that the speedometer deviation records should be admissible since, unlike the Samuels [People v. Samuels, 302 N.Y. 163, 96 N.E.2d 757] and Roth [People v. Roth, 11 N.Y.2d 80, 226 N.Y.S.2d 421, 181 N.E.2d 440] cases cited above, they were not records made outside of the ordinary course of police department business, solely for the instant litigation. It is generally true that such speedometer tests are made at regularly scheduled intervals, and that the records kept are merely memorials of the fact that the tests were made and what the results were. This is a classic example of making records in the regular course of business; and it is probably the regular course of police business in maintaining highway safety to make such records at the time of the test. While it is true that such records may later be used in litigation, such was not the sole *227 purpose when they were made, and, therefore, they should not be excluded merely because this was a possible future use.
We further hold that the inspection certificate is a report and finding of a public official within the provisions of Evid. R. 63(15), which provides:
Subject to Rule 64, a statement is admissible if in the form of (a) a written statement of an act done, or an act, condition or event observed by a public official if it was within the scope of his duty either to perform the act reported or to observe the act, condition or event reported and to make the written statement, or (b) statistical findings made by such a public official whose duty it was to investigate the facts concerning the act, condition or event and to make statistical findings.
The rationale for the admissibility of written statements as to an act done by a public official is set forth in McCormick, Evidence, (2 ed. 1972) § 315 at 735-736, as follows:
The special trustworthiness of official written statements is found in the declarant's official duty and the high probability that the duty to make an accurate report has been performed. * * *
A special need for this category of hearsay is found in the inconvenience of requiring public officials to appear in court and testify concerning the subject matter of their statements. Not only would this disrupt the administration of public affairs, but it almost certainly would create a class of official witnesses. Moreover, given the volume of business in public officers, the official written statement will usually be more reliable than the official's present memory. For these same reasons, there is no requirement that the declarant be shown to be unavailable as a witness.
See also, Phillips v. Erie Lackawanna R. Co., 107 N.J. Super. 590, 593-599 (App. Div. 1969), for an excellent review of the development of Evid. R. 63(15).
The strong and convincing indicia of trustworthiness which support the admissibility of the inspection certificate as a business record apply with equal force to support its admissibility under Evid. R. 63(15). The duty performed by the coordinator in testing the instrument to determine whether it is operating properly requires little or no exercise *228 of discretion. While the coordinator must be trained to perform this duty, his determination is primarily the result of a mechanical process, i.e., whether the instrument is operating accurately within tolerable limits based on the test performed. Furthermore, since the coordinator testing the instrument examines many such instruments periodically, he, of necessity, would have to rely more upon his record than on his recollection of the inspection of the particular instrument involved. Thus, we hold that the inspection certificate is also admissible in evidence by virtue of Evid R. 63(15).
The conclusion we reach is supported in principle by State v. Woodward, 1 Or. App. 338, 462 P.2d 685 (1969), wherein the Court of Appeals of Oregon upheld the admissibility of a certified copy of an official record of the Oregon State Board of Health, which, as here, certified that a breathalyzer instrument had been tested and was found to be accurate by a trained technician under an Oregon statute (ORS 43.330), which provided in pertinent part:
Other official documents may be proved as follows:
(1) Acts of the executive or administrative departments of this state and of the United States by the records of the departments, certified by the department heads * * *.

* * * * * * * *
(5) Acts of a public corporation of this state or of a board or department, by a copy certified by the legal keeper * * *.
Moreover, we view Evid. R. 63(15) as particularly appropriate for the admission of an inspection certificate. Under this exception to the hearsay rule the inspection certificate need merely be authenticated as any other document to be offered in evidence (see Evid. R. 67), subject, of course, to Evid. R. 64 which gives the trial judge the discretion to exclude the inspection certificate if it appears that the intention to offer it was not made known by the State in sufficient time in order to provide defendant with a fair opportunity to meet it. Admission of the inspection certificate under Evid. R. 63(15) avoids the burden cast upon the *229 State to qualify the document as a business record if offered under Evid. R. 63(13).
While we hold that the inspection certificates here involved are business records under Evid. R. 63(13), as well as the reports and findings of a public official under Evid. R. 63 (15), and therefore properly admissible as an exception to the hearsay rule, nevertheless, we are of the view that the courts below erred in admitting them in evidence in this case. Our review of the record reveals that the State failed to authenticate the inspection certificates in any manner as required by Evid. R. 67. Furthermore, the State failed to lay any foundation qualifying the inspection certificates as business records under Evid. R. 63(13). See People v. Foster, supra.
Affirmed.
NOTES
[1] The certificates here involved are in the following form:
 STATE OF NEW JERSEY
 DEPARTMENT OF LAW AND PUBLIC SAFETY
 DIVISION OF STATE POLICE
 INSPECTION CERTIFICATE
 Instrument _________________________ Number ________________ has
 been inspected and found to be in good operating order on _______
 _________________________________________________________________
 Date
 Inspector _______________________________________________________
 NJ State Police 343 (Rev 1-67)