Commonwealth *v*. Sweet, Appellant.

Argued November 16, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Sherman K. Levine,* for appellant.

*Paul W. Johnson,* Assistant District Attorney, with him *Donald E. Williams,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., February 27, 1975:

Appellant was convicted by a jury of operating a motor vehicle while under the influence of intoxicating liquor.[1] In this appeal he challenges as error the admission into evidence of the results of a breathalyzer chemical intoxication test, and asserts that the judge committed error in permitting certain cross-examination of a district magistrate.

At the trial two police officers testified to appellant's demeanor at the time of his arrest. They testified that his

---

1. Act of April 29, 1959, P.L. 58, §1037; 75 P.S. §1037 (1971).

vehicle veered across lanes of traffic, that when he was stopped he had difficulty getting out of his car, that he was disoriented, had the odor of alcohol on his breath and had difficulty with standard coordination tests. He was then placed under arrest and taken to the police barracks where he was administered a breathalyzer test which showed a blood alcohol reading of .20 percent.[2]

The breathalyzer test is a chemical intoxication test designed to determine the alcoholic content of a breath sample provided by a suspect. The sample, which is introduced by having the suspect blow alveolar air into a tube, bubbles through a test ampoule. The ampoule is a glass container holding three cubic centimeters of a .025 percent potassium dichromate in a 50 percent solution of sulphuric acid. The alcohol in the breath sample effects a change in color and in the light transmissibility of the solution correlative to the amount of alcohol present. The change in light transmissibility is registered on a meter which calculates the degree of alcohol in the circulatory system of the suspect. *See People v. Hitch,* 11 Cal. 3d 159, 520 P.2d 974, 113 Cal. Rptr. 158 (1974).

After the test is completed the police officer verifies the accurate operation of the machine by using a reference solution containing a known .10 percent alcohol solution. If the machine records a .10 percent reading the officer assumes the accuracy of the suspect's test and the procedure is completed.

The appellant argues, and the Commonwealth concedes, that at trial no competent evidence was adduced to establish that the test ampoules contained accurate chemical solutions or that the reference solution was accurately prepared. The appellant contends that an error in either of the solutions would produce an erroneous result in

---

2. The Act of April 29, 1959, P.L. 58, §624.1, *as amended,* 75 P.S. §624.1 (1971) establishes a presumption that a driver is under the influence of intoxicating liquor where the chemical intoxication test ascertains a blood alcohol reading of .10 percent or more.

the breathalyzer test and that this lack of proof renders invalid and inadmissible the results of the test.

Appellant's point is well taken but we reject it for numerous reasons. At the outset we note that the admissibility of any experimental or scientific evidence depends upon presenting an adequate foundation. *See, e.g., Commonwealth v. Slider*, 229 Pa. Superior Ct. 93, 323 A.2d 376 (1974). The statutory elements of a necessary foundation for a chemical intoxication test are: (1) that the test was administered by qualified personnel; (2) with equipment approved by the secretary of transportation; (3) at the direction of a police officer having reasonable grounds to believe the person to have been driving while under the influence.[3] In addition, due process requires proof that the test was properly conducted. *See, e.g., State v. Conners*, 125 N.J. Super. 500, 311 A.2d 764 (1973). All of these elements were satisfied in the case before us, and such satisfaction has been considered heretofore sufficient for admissibility of the test results. It also appears that most other courts permit the breathalyzer test results to be admitted without consideration of the accuracy of the chemical solutions. *See, e.g., State v. Zaragoza*, 21 Ariz. App. 596, 522 P.2d 552 (1974); *State v. Kramme*, 491 S.W.2d 24 (Mo. App. 1973); *State v. Sherill*, 15 N.C. App. 590, 190 S.E.2d 405 (1972); *City of Olympia v. Sprout*, 5 Wash. App. 897, 492 P.2d 586 (1971); *contra, Hill v. State*, 158 Tex. Crim. App. 313, 256 S.W.2d 93 (1953); *cf. State v. Hall*, 39 Ohio App. 2d 87, 315 N.E.2d 504 (1973).

We also note that the quality controls employed in the preparation of the test ampoules present a strong incidence of reliability. The ampoules are prepared by the manufacturer of the breathalyzer and randomly sampled and tested. Each group found to be correct is then

---

3. Act of April 29, 1959, P.L. 58, §624.1(a); *as amended*, 75 P.S. §624.1(a).

stamped with a control lot number. Additionally, a random sampling is performed by the Pennsylvania State Police Crime Lab, although no certificate is made noting the accuracy of the lot. Certification procedures are employed in other jurisdictions. *See, e.g., State v. McGeary,* 129 N.J. Super. 219, 322 A.2d 830 (App. Div. 1974); *State v. Woodward,* 1 Or. App. 338, 462 P.2d 685 (1969); *see also State v. Coffman,* 11 Or. App. 307, 502 P.2d 605 (1972).

We note further that the use of the simulator with a reference solution, although also uncertified as to its accuracy, acts as a scientific control check on the accuracy of the test ampoules and the machine itself. In order for the reading on the reference solution to be correct, the machine must be correct, the reference solution accurate and the test ampoules accurate; or, in the alternative, errors in a least two of the elements must so coalesce as to counter each other exactly. It would appear logically permissible to assume that the probability that multiple errors in solutions prepared by different individuals would so counterbalance each other as to produce the appearance of a correct result is so small as to permit less than a reasonable doubt. *Accord, People v. Meikrantz,* 77 Misc. 2d 892, 351 N.Y.S.2d 549 (N.Y. Co. 1974); *cf. State v. Sprague,* 113 R.I. 351, 322 A.2d 36 (1974); *United States v. Wedgewood, Inc.,* 457 F.2d 648 (1st Cir. 1972).

Additionally we note that the appellant was not convicted by the breathalyzer machine alone. Two officers testified as to his diminished abilities, coordination and orientation. This corroboration is, in itself, often sufficient to render any errors in test authentication harmless. *See, e.g., Commonwealth v. Kaufold,* 222 Pa. Superior Ct. 275, 294 A.2d 743 (1972); *Klebs v. State,* 305 N.E. 2d 781 (1974); *People v. Clifton,* 11 Ill. App. 3d 112, 296 N.E.2d 48 (1973); *State v. Allen,* 14 N.C. App. 485, 188 S.E.2d 568 (1972).

Lastly, we must note that the appellant was not precluded from attacking the accuracy of the chemical solutions before the jury, *cf. Slaughter v. State*, 322 A.2d 15 (1974), and he made no. attempt to secure an independent analysis of the solutions to challenge their precision. *Cf. People v. Noonan*, 20 Cal. App. 3d 862, 98 Cal. Rptr. 125 (1971). Neither did the appellant obtain or attempt to obtain an additional or duplicate test although the statute guarantees him the right "to have a physician of his own choosing then and there administer a breath or blood chemical test in addition, and the results of such tests shall also be admissible in evidence."[4]

Although it may be evidentially preferable and logistically feasible to provide a precise certification of the accuracy of the solutions used,[5] we are not prepared to declare the results of the breathalyzer test inadmissible for want of such certification. The reliability of the scientific evidence properly could be left to the jury.

During the presentation of his case the appellant called as a witness the district magistrate who presided at his preliminary hearing for the purpose of showing that the testimony of the prosecuting officer was different at the hearing than at trial. He now alleges that the court erred in permitting the district attorney to cross-examine the witness on matters other than the inconsistent statement. However, "the right of cross-examination extends beyond the subjects testified to in direct testi-

---

4. *Id.* at §624.1 (9). Although our case law does not require a driver to be informed of this right, *see Commonwealth v. Morrison*, 21 Cumb. L.J. 93 (Pa. C.P. 1971), the police report indicates that the appellant in this case was so informed.

5. The certification would be admissible under the business records or official statement exceptions to the hearsay rule. *Cf. Commonwealth v. Slider*, 229 Pa. Superior Ct. 93, 323 A.2d 376 (1974) ; *State v. McGeary*, 129 N.J. Super. 219, 322 A.2d 830 (App. Div. 1974).

378

mony and includes the right to examine on any facts tending to refute 'inferences or deductions' arising from matters testified to on direct." *Commonwealth v. Lopinson*, 427 Pa. 284, 300, 234 A.2d 552, 562 (1967).[6] The district attorney has a duty to fully represent his client, *Commonwealth v. Petrakovich*,     Pa.    , 329 A.2d 844 (1974), and we find no error in the scope of his cross-examination.

Appellant's last assignment of error which alleges that the district magistrate impermissibly alluded to the appellant's exercise of his right to remain silent, is totally without merit. The comment referred to makes no such implication and permits no such inference.

Judgment affirmed.

---

6. The subsequent procedural history of this case is not relevant to the point for which it is cited.