## Commonwealth v. Lucarini

*Eric Cox*, for Commonwealth.
*Gustine J. Pelagatti*, for defendant.

LOWE, *P.J.*, December 19, 1977—At approximately 3:00 a.m. on October 15, 1976, officers John Hoffman and Paul Antal of the Whitemarsh Township Police Department observed defendant operating his Chrysler Imperial in an erratic manner. After observing the automobile for a distance of approximately one-half mile, they stopped it and requested defendant to step outside. Officer Hoffman then asked defendant to perform certain field tests, which request was refused. Defendant's breath reeked of intoxicants, he was unsteady on his feet, and he walked with a staggering gait. Officer Hoffman thereupon arrested defendant, advised him of his Miranda rights, and transported him to the Whitemarsh police station where a breathalyzer test was administered. The test result revealed twenty-three one-hundredths percent alcohol in defendant's blood.

Defendant filed a petition to suppress the results of the breathalyzer test because officer Hoffman destroyed the test ampoule. This request was denied after a hearing. Immediately thereafter, trial before the undersigned, sitting without a jury, convened August 16, 1977. Defendant was convicted

of operating a motor vehicle while under the influence of intoxicating liquor[1] and assessed a fine of $200. Defendant appeals from the denials of motions for a new trial and in arrest of judgment.

The only issue advanced in support of the motion for a new trial is the admissibility of the results of the breathalyzer test. This evidence was admissible for the following reasons: (1) defendant failed to comply with Pa.R.Crim.P. 323; (2) an adequate foundation was established to assure the accuracy of the chemical test; and (3) defendant did not demonstrate that a scientific analysis of the ampoule would provide evidence which could result in his exoneration.

Defendant's initial contention is that his application to suppress was wrongfully denied. Pa.R.Crim.P. 323(d) has been violated in that defendant's application did not (1) aver the precise constitutional grounds rendering the evidence inadmissible, or (2) plead with particularity the facts or events in support thereof. The trial courts of this Commonwealth have been specifically enjoined from considering applications to suppress which fail to conform to the mandate of Pa.R.Crim.P. 323(d): Com. v. Turra, 442 Pa. 192, 275 A. 2d 96 (1971).

The appellate courts of this Commonwealth have made it clear that rules of criminal procedure are to be strictly construed and literally interpreted. Failure to comply precisely must result in a denial of the relief sought: In the Matter of Harrison Square, Inc., 470 Pa. 246, 368 A. 2d 285 (1977); Com. v. Beasley, 229 Pa. Superior Ct. 180, 323 A. 2d 840

1. Act of April 29, 1959, P.L. 58, sec. 1037, 75 P.S. §1037.

(1974). Justice Roberts has observed "[w]e, certainly do not promulgate rules merely to have them ignored or circumvented." Com. v. Rose, 437 Pa. 30, 36, 261 A. 2d 586 (1970).

This court would have admitted the results of the breathalyzer test notwithstanding the procedural impropriety. An analysis of the breathalyzer mechanism and its operation might be helpful. Officer Hoffman, certified by the Pennsylvania State Police to operate the Breathalyzer 1000, prepared the machine and observed defendant. For 20 minutes prior to the examination, the subject must refrain from placing anything into his mouth which could emit volatile vapors and possibly produce a false reading. Approximately four minutes into the waiting period, officer Hoffman noticed defendant placing mints into his mouth. He testified that he immediately directed defendant to take the mints out of his mouth and he initiated a new 20-minute waiting period during which he did not see defendant place anything into his mouth. The test was then ready to be administered. The theory of the breathalyzer test is set forth in an opinion of the Superior Court as follows:

"The breathalyzer test is a chemical intoxication test designed to determine the alcoholic content of a breath sample provided by a suspect. The sample which is introduced by having the suspect blow alveolar air into a tube bubbles through a test ampoule. The ampoule is a glass container holding three cubic centimeters of a .025 percent potassium dichromate in a 50 percent solution of sulphuric acid. The alcohol in the breath sample effects a change in color and in the light transmissibility of the solution correlative to the amount of alcohol present. The changes in light transmissibility is

registered on a meter which calculates the degree of alcohol in the circulatory system of the suspect. See People v. Hitch, 11 Cal. 3d 159, 520 P. 2d 974, 113 Cal. Rptr. 158 (1974)." Com. v. Sweet, 232 Pa. Superior Ct. 372, 374, 335 A. 2d 420 (1975).

Officer Hoffman testified concerning the control ampoule and the test ampoule. The test ampoule is gauged, opened by snapping off the top, and is placed between two photoelectric cells within the instrument. At the beginning of the test, the yellowish liquid inside is used as a medium to calibrate the instrument. Upon completion of the test the breath sample has bubbled through the potassium dichromate and it changes color. The photoelectric cells are again placed into operation and it moves a light carriage a certain distance which, in turn, determines the amount of alcohol in the breath. The machine analyzes the chemical change irrespective of the ampoule color change. In fact, officer Hoffman pointed out that an individual who was blind could effectively operate the machine. The ampoule was routinely destroyed after the administration of the test.

It is unnecessary to offer evidence establishing that the test ampoule contained accurate chemical solutions or that the reference solution was accurately prepared if there is an adequate foundation: Com. v. Sweet, supra. The requisite elements to establish the foundation for a chemical intoxication test are: (1) a police officer who has reasonable grounds to believe the accused to have been driving a motor vehicle while under the influence; (2) administration by qualified personnel; (3) equipment approved by the Secretary of Transporation: Act of April 29, 1959, P.L. 58, sec. 624.1, as amended, 75 P.S. §624.1(a).

Due process requires proof that the test was properly conducted: Com. v. Sweet, supra, citing New Jersey v. Conners, 125 N.J. Super. 500 (1973). The essential elements were satisifed in this case. The Superior Court has pointed out that quality controls employed in the preparation of the test ampoules present a strong incidence of reliability.

"The ampoules are prepared by the manufacturer of the breathalyzer and randomly sampled and tested. Each group found to be correct is then stamped with a control lot number. Additionally, a random sampling is performed by the Pennsylvania State Police Crime Lab, although no certificate is made noting the accuracy of the lot. . . . We note further that the use of the simulator with a reference solution, although also uncertified as to its accuracy, acts as a scientific control check on the accuracy of the test ampoules and the machine itself. In order for the reading on the reference solution to be correct, the machine must be correct, the reference solution accurate and the test ampoules accurate. . . ." Com. v. Sweet,, supra, at p. 375.

Additionally, the Breathalyzer 1000 is a self-contained and self-checking device.[2] It determines

2. The Breathalyzer Model 1000 has a direct reading manipulation-proof unit which precludes any control over the final readings of the machine by the operator once the initial test cycle is initiated. Prior to the actual test the instrument goes through a purge cycle and a sample cycle. The purge cycle consists of cleaning out any air to be certain that there is nothing inside but pure air. A reading of .88 indicates that all of the elements in the pneumatron tubes are working and the instrument is functioning correctly. After having purged itself, the machine runs a sample cycle. A reading of .00 determines that there is no alcohol content whatsoever inside the instrument. A sample of breath is then admitted. The ticket shows

the reading from the sample automatically and without operator control. The result herein was twenty-three one-hundredths of one percent. If the chemical analysis of a person's breath demonstrates: "That the amount of alcohol by weight in the blood of the person tested is ten one-hundredths percent or more, it shall be presumed that defendant was under the influence of intoxicating liquor." Act of April 29, 1959, P.L. 58, sec. 624.1(c)(3), 75 P.S. §624.1(c)(3). The result here indicates that defendant was presumptively under the influence of intoxicating beverage.

It is to be observed that defendant was not convicted by the results of the breathalyzer alone. Officers Hoffman and Antal testified to his diminished coordination and staggering gait. This corroboration is, of itself, sufficient to render any errors in test authentication harmless: Com. v. Kaufold, 222 Pa. Superior Ct. 275, 294 A. 2d 743 (1972). Both officers testified that in their opinion defendant had operated his vehicle while under the influence of alcohol.

The California Court of Appeals, the highest state court, has adjudicated this precise issue. If the test ampoule is unavailable, the trial court must determine whether its availability would have been of value to the defense: Van Halen v. Municipal Court, 3 Cal. App. 3d 233, 83 Cal. Rptr. 140 (1969). The following year the same question was pre-

---

the purge readings, the subject's reading, and the standing reading of a simulator sample to verify that the machine gives a correlation reading. The ticket in the instant case demonstrated that the machine was in proper functioning order. The purge cycle provided a .88 reading, the sample test .00 indicating that no alcohol was in the pure air, and defendant's breath sample was .23.

sented in People v. Noonan, 20 Cal. App. 3d 862, 98 Cal. Rptr. 125 (1971). The court held that failure of the state to preserve the test ampoule, which had been routinely destroyed after its use, did not require that the state be barred from admitting the results. Defendant contended that he had been denied the opportunity to subject it to an independent laboratory analysis which prevented him from refuting the results. The court held that "it was first the duty of defendant to demonstrate a reasonable possibility that a scientific analysis of the ampoule could give evidence on the issue of guilt which might result in his exoneration, and only after that duty had been discharged did the burden fall on the prosecution to establish that it was unable through reasonable efforts in good faith to preserve the test ampoule." 20 Cal. App. 3d 862, 865, 98 Cal. Rptr. 125, 128 (1971). The California court has reduced the issue of admissibility of the evidence to one of fact. The question thus becomes whether or not any valuable scientific evidence can be adduced from a re-examination of the test ampoule which would be of assistance to defendant.

Before trial, the issue of the admissibility of the scientific results of the breathalyzer test was decided by this court. The Commonwealth moved for their admission and defendant objected. Defendant offered no evidence or testimony on whether the test ampoule could have been retained in a practical and feasible manner or whether a post test analysis of the ampoule would have been of value to the defense. Defendant failed to sustain his burden. The court properly admitted the evidence.

The denial of the motion for new trial is predicated upon the merits discussed above. There is another aspect of this case which should foreclose

the instant appeal. Pennsylvania Rule of Appellate Procedure 1925(b) provides that the lower court may direct the appellant to "serve on the trial judge a concise statement of the matters complained of on the appeal. A failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of." On November 9, 1977, the trial judge directed defendant and his counsel to submit forthwith a concise statement of the matters complained of pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). This court has been patient in awaiting the receipt of the requested statement, which to the date of this opinion has not been received. The failure to honor this request should be deemed a waiver of all defendant's objections. In accord: In the Matter of Harrison Square, Inc., supra; Com. v. Wicker, 102 Montg. 238 (1977); Com. v. Ellis, 101 Montg. 422 (1976) (on appeal this issue was not addressed: 247 Pa. Superior Ct. 585, 373 A. 2d 1121 (1977)).