STATE OF NORTH CAROLINA v. EILEEN M. SMITH

No. 271PA84

(Filed 4 December 1984)

**Automobiles and Other Vehicles § 126.2; Constitutional Law § 70— driving while impaired—use of affidavit to prove alcohol concentration—no violation of right to confrontation**

  G.S. 20-139.1(e1), which provides for the introduction of an affidavit from a chemical analyst to prove alcohol concentration, does not violate a defendant's Sixth Amendment right to confrontation. Although the affidavit is a form of hearsay, the Legislature has created a statutory exception to the hearsay rule, based on the business and public records exception, which is constitutionally permissible because the science of breath analysis for alcohol concentration has become increasingly reliable, increasingly less dependent on human skill of operation, and increasingly accepted as a means for measuring blood alcohol concentration; the information the analyst is required to record is precisely the sort of evidence that the traditional business and public records exception is intended to make admissible, and does not call for an opinion or conclusion from the analyst; the nature of the evidence and the carefully delineated guidelines for the analyst make the need for and the utility of confrontation at trial minimal, especially when North Carolina has an educated and experienced factfinder in the district court judge; the admission of affidavits to prove alcohol concentration represents a distinct exception to the hearsay rule governed by the procedures followed by analysts in impaired driving cases, including the requirement that the report be sworn to and properly executed

State v. Smith

before an authorized official; and defendant may subpoena the analyst in district court and has the absolute right to trial *de novo* in superior court, where the analyst must appear. North Carolina Constitution Art. I, §§ 19 and 23; G.S. 8C-1, Rules 802 and 803; G.S. 20-139.1(b4); G.S. 7A-290.

Justice MARTIN dissenting.

Justices EXUM and FRYE join in the dissenting opinion.

ON discretionary review of an Order of *Judge William T. Grist* entered at the April 2, 1984 Mixed Session of Superior Court, MECKLENBURG County. On May 15, 1984, the Court of Appeals allowed the defendant's petition for writ of certiorari. On July 7, 1984, the Supreme Court allowed the State's petition for discretionary review prior to determination by the Court of Appeals. N.C.G.S. § 7A-31(b). Heard in the Supreme Court on October 9, 1984.

*Rufus L. Edmisten, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, David Roy Blackwell, Assistant Attorney General, and W. Dale Talbert, Assistant Attorney General, for the State.*

*Haywood, Carson & Merryman, by Lyle J. Yurko, J. Marshall Haywood, Eben T. Rawls, and Joseph L. Ledford for defendant appellant.*

MITCHELL, Justice.

The defendant was charged under N.C.G.S. § 20-138.1 with the offense of impaired driving. Prior to trial the defendant filed and served a motion to suppress an affidavit prepared pursuant to N.C.G.S. § 20-139.1(e), contending that its admission into evidence would violate her right to confrontation. Following a hearing in District Court, Judge W. Terry Sherrill denied the motion. Upon the defendant's petition to Superior Court for a writ of certiorari, Judge Grist affirmed. Judge Grist's Order recites *inter alia* the following facts pertinent to this appeal:

2. On December 6, 1983, defendant Eileen M. Smith appeared in District Court on a North Carolina Uniform Citation charging her with the offense of driving while impaired on November 2, 1983.

3. Prior to trial, the defendant made a motion through her attorneys, J. Marshall Haywood, Eben T. Rawls, and Lyle J. Yurko of the Mecklenburg County Bar, that the Honorable W. Terry Sherrill, District Court Judge Presiding, prohibit the State of North Carolina from introducing at her trial the affidavit of the chemical analyst to prove her alcohol concentration as provided in N.C.G.S. 20-139.1(e1). It was stipulated for purposes of the motion that the State would offer the affidavit at the criminal trial and that the affidavit met all the requirements for admissibility mandated by N.C.G.S. 20-139.1 (e1).

4. On February 15, 1984, having considered the evidence offered, the argument of counsel and the memoranda submitted by both parties, Judge Sherrill ruled that the affidavit provisions of N.C.G.S. 20-139.1(e1) do not violate the defendant's right to confront the witness against her and her right to a fair trial as secured by the Sixth and Fourteenth Amendments to the Constitution of the United States and the Constitution of the State of North Carolina.

5. On March 15, 1984, upon petition by the defendant for certiorari review of the District Court's ruling pursuant to Rule 19 of the General Rules of Practice for the Superior and District Courts, the Honorable William T. Grist, Resident Superior Court Judge granted said petition and scheduled arguments for April 5, 1984.

6. Article IV, section 13 of the Constitution of the State of North Carolina provides that the General Assembly has the authority to determine the rules of practice and procedure in the District Court Division as long as such rules of procedure do not violate the Constitution.

Based on these and other findings, Judge Grist concluded that:

1. It is presumed that N.C.G.S. 20-139.1(e1) is constitutional and that who attacks it must overcome this presumption.

2. The use of a chemical analyst's affidavit, in lieu of the analyst's live appearance, by the State in a criminal trial in the District Court Division of the General Court of Justice as

proof of the facts noted in the chemical analyst's affidavit, does not deny to the criminal defendant any right or privilege granted by the Constitution of the United States or the Constitution of the State of North Carolina.

3. N.C.G.S. 20-139.1(e1) is constitutional under the provisions of the Sixth Amendment to the United States Constitution and sections 19 and 23 of Article I of the Constitution of the State of North Carolina.

The Court of Appeals allowed the defendant's petition for certiorari to review the Order of the Superior Court. We allowed the State's petition for discretionary review prior to a determination by the Court of Appeals.

The defendant challenges the constitutionality of a statutory provision which the State contends is necessary for the effective administration of the Safe Roads Act, N.C.G.S. §§ 20-138.1 to 140. The section in question, N.C.G.S. § 20-139.1(e1), provides:

(e1) Use of Chemical Analyst's Affidavit in District Court.— An affidavit by a chemical analyst sworn to and properly executed before an official authorized to administer oaths is admissible in evidence without further authentication in any hearing or trial in the District Court Division of the General Court of Justice with respect to the following matters:

(1) The alcohol concentration or concentrations of a person given a chemical analysis and who is involved in the hearing or trial.

(2) The time of the collection of the blood or breath sample or samples for the chemical analysis.

(3) The type of chemical analysis administered and the procedures followed.

(4) The type and status of any permit issued by the Department of Human Resources that he held on the date he performed the chemical analysis in question.

(5) If the chemical analysis is performed on a breath-testing instrument for which regulations adopted pursuant to subsection (b) require preventive maintenance, the date the

most recent preventive maintenance procedures were per-
formed on the breath-testing instrument used, as shown on
the maintenance records for that instrument.

The Department of Human Resources must develop a form
for use by chemical analysts in making this affidavit. If any
person who submitted to a chemical analysis desires that a
chemical analyst personally testify in the hearing or trial in
the District Court Division, he may subpoena the chemical
analyst and examine him as if he were an adverse witness.

It is the defendant's contention that evidence of her alleged im-
pairment, as demonstrated by the results of a chemical analysis
performed on a breath-testing instrument, must be introduced in
District Court through the in-court testimony of the analyst in
order to assure her right to confront and cross-examine witnesses
against her. The defendant specifically rejects any notion that her
constitutional right in this regard is adequately protected by her
statutory right to subpoena the analyst. Nor is the defendant will-
ing to concede that her constitutional right to confrontation is
adequately preserved in that the presence of the analyst is
assured should she choose to exercise her right to a trial *de novo*
in Superior Court pursuant to N.C.G.S. § 7A-290.

For the reasons set forth herein, we hold that our legislature,
through N.C.G.S. § 20-139.1(e1), has enacted a constitutionally
permissible procedure attuned to scientific and technological ad-
vancements which have insured reliability in chemical testing for
blood alcohol concentration. We further hold that this statutory
procedure does not violate the accused's right to confrontation.

The defendant's constitutional challenge to N.C.G.S. § 20-
139.1(e1) evolves from the fact that the evidence presented in the
form of an affidavit is hearsay. "Whenever the assertion of any
person, other than that of the witness himself in his present
testimony, is offered to prove the truth of the matter asserted,
the evidence so offered is hearsay." 1 Brandis on North Carolina
Evidence § 138 (1982). The primary purpose for the hearsay rule
is to insure an opportunity for cross-examination.

If the declarant were testifying, the adverse party could by
cross-examination inquire into the narrator's capacity and op-
portunity to observe the facts which he related, the reliabili-

ty of his memory, his ability to express his thoughts intelligibly and accurately, and his disposition to tell the truth generally or with respect to the particular case. When his hearsay statements are offered the opportunity to test these qualities of perception, memory, narration and veracity is greatly lessened and often completely destroyed.

*Id.* § 139.

N.C.G.S. § 20-139.1(e1) has effectively created a statutory exception to the hearsay rule. This Court has recognized the authority of the legislature, our law-making body, to make such exceptions. *See In re Arthur*, 291 N.C. 640, 231 S.E. 2d 614 (1977). *See also* 1 Brandis on North Carolina Evidence § 165 ("Affidavits relating to particular matters have in some instances been made admissible by statute."). Our recently enacted Rules of Evidence, provide that "[h]earsay is not admissible *except as provided by statute* or by these rules." (Emphasis added.) N.C.G.S. § 8C-1, Rule 802. The legislature therein codified its own inherent right to enact, under appropriate circumstances, statutory exceptions to the hearsay rule.

By recognizing the authority of the legislature in this instance to enact N.C.G.S. § 20-139.1(e1) as an exception to our traditional hearsay rule, we do not intend to intimate that the challenged provision came as a result of arbitrary action unrelated to the general policies or purposes underlying the rules against hearsay. Indeed, we believe that N.C.G.S. § 20-139.1(e1) *reflects a rationale which complies fully with historically recognized legitimate reasons for exceptions to the general rule against hearsay evidence.* Furthermore, we are cognizant of the fact that a statutory exception to the hearsay rule may nevertheless violate constitutional guarantees of the right of confrontation. *See California v. Green*, 399 U.S. 149 (1970).

For purposes of our analysis, however, we do not intend to discuss the defendant's constitutional issue in academic isolation. To do so would be to ignore the practical, common-sense rules which, over the years, our courts have applied in dealing with the competing interests of the accused who asserts a right to confront and cross-examine witnesses and the State which asserts a need to introduce relevant hearsay evidence. Indeed, a literal reading of the Sixth Amendment's Confrontation Clause would require

the exclusion of any statement made by a declarant not present at trial and "abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." *Ohio v. Roberts*, 448 U.S. 56, 63 (1980). Thus, although the right of confrontation is a fundamental right, it "must occasionally give way to considerations of public policy and the necessities of the case." *Mattox v. United States*, 156 U.S. 237, 243 (1895). For example, in *Ohio v. Roberts* the Supreme Court recognized that "every jurisdiction has a strong interest in effective law enforcement, and in the development and precise formulation of the rules of evidence applicable in criminal proceedings," and further noted that "competing interests, if 'closely examined,' *Chambers v. Mississippi*, 410 U.S. at 295, 93 S.Ct. at 1046, may warrant dispensing with confrontation at trial." 448 U.S. at 64.

In addition, it has been recognized that the "Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots," *Dutton v. Evans*, 400 U.S. 74, 86 (1970), and that they are "generally designed to protect similar values." *California v. Green*, 399 U.S. 149 (1970). Like the hearsay rule, "[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*" 5 Wigmore on Evidence § 1395 (Chadbourn rev. 1974).

In determining that the prodecure set forth in N.C.G.S. § 20-139.1(e1) is constitutionally sound and rejecting the defendant's contention that the State must, as a prerequisite to the admissibility of the analyst's affidavit, show that the analyst is unavailable to testify, we refer to Justice Harlan's concurring opinion in *Dutton v. Evans*. There, Justice Harlan reevaluated his earlier position in *California v. Green*, to the extent that he had advocated a "preferential rule, requiring the prosecutor to avoid the use of hearsay where it is reasonably possible for him to do so." He concluded that:

A rule requiring production of available witnesses would significantly curtail development of the law of evidence to eliminate the necessity for production of declarants where production would be unduly inconvenient and of small utility to a defendant. Examples which come to mind are the Business Records Act, 28 USC §§ 1732-1733, and the exceptions to the hearsay rule for official statements, learned treatises,

and trade reports. See, e.g., Uniform Rules of Evidence 63(15), 63(30), 63(31); *Gilstrap v. United States*, 389 F. 2d 6 (CA 5 1968) (business records); *Kay v. United States*, 255 F. 2d 476 (CA 4 1958) (laboratory analysis). If the hearsay exception involved in a given case is such as to commend itself to reasonable men, production of the declarant is likely to be difficult, unavailing, or pointless. In unusual cases, of which the case at hand may be an example, the Sixth Amendment guarantees federal defendants the right of compulsory process to obtain the presence of witnesses, and in *Washington v. Texas*, 388 U.S. 14, 18 L.Ed. 2d 1019, 87 S.Ct. 1920 (1967), this Court held that the Fourteenth Amendment extends the same protection to state defendants.

400 U.S. at 95-96.

Against this background we consider whether the State of North Carolina may constitutionally rely upon the affidavit of a chemical analyst during a trial in District Court in order to sustain a charge of impaired driving. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Pointer v. Texas*, 380 U.S. 400 (1965), the Supreme Court held that the Sixth Amendment right of confrontation includes the opportunity to cross examine and applies to state proceedings as well as to the federal courts. The Constitution of North Carolina incorporates a similar right. N.C. Const. Article I, §§ 19 and 23. *See State v. Watson*, 281 N.C. 221, 188 S.E. 2d 289, *cert. denied*, 409 U.S. 1043 (1972). In *California v. Green*, the Supreme Court offered the following insight concerning the underlying purpose of the Sixth Amendment right to confrontation:

> Our own decisions seem to have recognized at an early date that it is this literal right to "confront" the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:
>
> "The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting

the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242-243, 39 L.Ed. 409, 411, 15 S.Ct. 337 (1895).

399 U.S. at 157-58.

Unquestionably, testing the accuracy and credibility of witnesses presented against an accused is vital to the factfinding process. Equally true is that where there has been "substantial compliance with the purposes behind the confrontation requirement," hearsay evidence may be admitted. *California v. Green*, 399 U.S. at 166. For example, it is well established that certain exceptions to the hearsay rule, such as the business and public records exceptions, "rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.'" *Ohio v. Roberts*, 488 U.S. at 66. *See Mattox v. United States*, 156 U.S. 237 (1895).

Because we believe that the statutory exception to the hearsay rule created by N.C.G.S. § 20-139.1(e1) has as its basis the sound reasoning which gave rise to the business and public records exceptions to the rule, it is helpful to view the statute in that context. In his treatise on evidence, Wigmore explains that although "[t]he principle of necessity . . . in one form or another is found in all the hearsay exceptions," under some circumstances, including the official statements (business and public records) exception,

> something less than an absolute impossibility is regarded as sufficient. The necessity reduces itself to a high degree of expediency. In none of these exceptions is it required that the witness be shown to be *unavailable by reason of death, absence*, or the like circumstances.
>
> In the present exception, it is easy to see why it is highly expedient, if not practically necessary, to accept the hearsay statement of an official, in certain classes of cases, instead of summoning him to attend and testify viva voce before a court or by deposition before a commissioner. The public officers are few in whose daily work something is not

done which must later be proved in court; and the trials are rare in which testimony is not needed from official sources. Were there no exception for official statements, hosts of officials would be found devoting the greater part of their time to attending as witnesses in court or delivering their depositions before an officer. The work of administration of government and the needs of the public having business with officials would alike suffer in consequence. Although, then, there is strictly no necessity for employing hearsay in the sense that the personal attendance of the officer is corporally impossible to obtain, there is nevertheless a high degree of expediency that the public business be not deranged by insisting on the strict enforcement of the hearsay rule.

5 Wigmore on Evidence § 1631 (Chadbourn rev. 1974).

Wigmore continues by noting that "the second essential for an exception to the hearsay rule is that some circumstantial probability of trustworthiness be found, to take the place of cross-examination so far as may be." As to official statements, trustworthiness stems from the presumption that

public officers do their duty. When it is a part of the *duty of a public officer* to make a statement as to a fact coming within his official cognizance, the great probability is that he does his duty and makes a correct statement. The consideration that regularity of habit, a chief basis for the exception for regular entries . . . will tend to this end is not here an essential one; for casual statements, such as certificates, may be admissible, as well as a regular series of entries in a registry. The fundamental circumstance is that an official duty exists to make an accurate statement, and that this special and weighty duty will usually suffice as a motive to incite the officer to its fulfilment. The duty may or may not be one for whose violation a penalty is expressly prescribed. The officer may or may not be one from whom in advance an express oath of office is required. No stress seems to be laid judicially on either of these considerations; nor need they be emphasized. It is the influence of the official duty, broadly considered, which is taken as the sufficient element of trustworthiness, justifying the acceptance of the hearsay statement.

*Id.*

As recently applied in a case involving the analysis of a controlled substance, one court discussed the rationale for the rule governing admissibility of a written statement of an act done or an act, condition or event observed by a public official as follows:

> The rule is both realistic and practical. Being charged with the obligation of accuracy, a public official's report is accorded a presumption of trust. And to require that a public official relinquish continued attention to the other tasks within his responsibility merely to repeat orally that which he has already written disserves the public. The rule is to be viewed and implemented in this context.

*State v. Malsbury*, 186 N.J. Super. 91, 97, 451 A. 2d 421, 424 (1982). The exception to the hearsay rule governing public records and reports has been invoked consistently by courts as the basis for admitting into evidence certificates concerning qualifications of the individual calibrating the breathalyzer instrument; calibration, maintenance, inspection, and testing of the instrument; approval of the laboratory testing the sample; testing of ampules and similator solutions used in such instruments, including the fact that they contained properly compounded materials; and the results of analysis. *See, e.g., State v. Huggins*, 659 P. 2d 613 (Alaska App. 1982); (relying on *Wester v. State*, 528 P. 2d 1179 (Alaska 1974), *cert. denied*, 423 U.S. 836 (1975)); *Best v. State*, 328 A. 2d 141 (Del. 1974); *Douglas v. State*, 145 Ga. App. 42, 243 S.E. 2d 298 (1978); *People v. Black*, 84 Ill. App. 3d 1050, 406 N.E. 2d 23 (1980); *State v. Jensen*, 351 N.W. 2d 29 (Minn. App. 1984); *State v. Becker*, 429 S.W. 2d 290 (Mo. App. 1968); *State v. Conners*, 129 N.J. Super. 476, 324 A. 2d 85 (1974); *People v. Freeland*, 118 Misc. 2d 486, 460 N.Y.S. 2d 907 (1983); *State v. Walker*, 53 Ohio St. 2d 192, 374 N.E. 2d 132 (1978); *Brown v. State*, 584 P. 2d 231 (Okla. 1978); *State v. Smith*, 66 Or. App. 703, 675 P. 2d 510 (1984); *Commonwealth v. Sweet*, 232 Pa. Super. 372, 335 A. 2d 420 (1975); *State v. Robbins*, 512 S.W. 2d 265 (Tenn. 1974); *Murray City v. Hall*, 663 P. 2d 1314 (Utah 1983). *Cf.*, N.C.G.S. § 20-139.1(b4) (Interim Supp. 1984) (Business Record exception to the hearsay rule for reports, logs and certificates relating to breath-testing instruments).

In each of the above cases a court was presented with the accused's argument that he was entitled to confront and cross-examine the individual responsible for preparing the document in question. In each case, the court found, explicitly or implicitly, that the document was not primarily testimonial but rather was merely the recordation of a fact as easily and as reliably proved by the document itself as by live testimony. Furthermore, the information contained in the document was of a type which by its mere recordation in the ordinary course of business, would be sufficiently reliable to be accepted as trustworthy evidence.

We recognize that each of these cases rests on its own facts, each construes statutes and rules of evidence which differ from those of North Carolina, and each involves a breathalyzer procedure unique to the particular equipment used. From these cases, however, emerges one significant fact: the science of breath analysis for alcohol concentration has become increasingly reliable, increasingly less dependent on human skill of operation, and increasingly accepted as a means for measuring blood alcohol concentration.

In this regard we have taken judicial notice of the fact that in North Carolina breath testing for blood alcohol concentration generally is conducted on equipment which requires minimal operator assistance. For example, The Intoxilizer, Model 4011AS, which uses a technique called infrared absorption, requires the operator to perform the following steps to conduct the test:

(1) Insure "READY" light is on and that breath tube is connected to pump tube;

(2) Insert test record. Turn mode selector to "ZERO SET". Turn zero adjust until .000 appears. Turn mode selector to "AIR BLANK";

(3) Insure alcoholic breath simulator thermometer shows proper operating temperature. After "AIR BLANK" cycle is completed, turn mode selector to "ZERO SET" and connect breath and pump tube to alcoholic breath simulator;

(4) Turn zero adjust until .000 appears and turn mode selector to "CALIBRATOR". Insure expected results are displayed and record time;

(5) Connect breath tube to pump tube. Turn mode selector to "AIR BLANK". After cycle is complete, turn mode selector to "ZERO SET";

(6) Insure observation period requirements have been met;

(7) Turn zero adjust until .000 appears. Turn mode selector to "BREATH";

(8) Turn digital display off;

(9) Collect breath sample. Record time;

(10) Turn digital display on;

(11) Connect breath tube to pump tube. Turn mode selector to "AIR BLANK". After cycle is complete, turn mode selector to "ZERO SET";

(12) For second test, repeat steps (6) through (11);

(13) Remove test record and record results.

If the alcohol concentrations differ by more than 0.02, a third or subsequent test shall be administered as soon as feasible by repeating steps (6) through (11) and (13).

N. C. Admin. Code tit. 10, § 7B.0344 (effective January 1, 1985). The results of the test are recorded on a computer printout card. The Breathalyzer, Model 2000, and the Intoximeter, Model 3000 also employ computer technology to test and record the results of breath samples. Regulations for the operation of these instruments are similar.

In short, the scientific and technological advancements which have made possible this type of analysis have removed the necessity for a subjective determination of impairment, so appropriate for cross-examination, and have increasingly removed the operator as a material element in the objective determination of blood alcohol concentration. Indeed, our legislature's recognition of this reliable and accurate innovation of blood alcohol concentration testing is manifested in N.C.G.S. § 20-138.1(a)(2) which now provides that a person who "after having consumed sufficient alcohol that he has, at any relevant time after driving, an alcohol concentration of 0.10 or more" commits the offense of impaired driving.

The defendant argues, and we agree, that the result of a breathalyzer analysis is crucial to a conviction. It has been suggested that the breathalyzer procedure now available for objectively determining blood alcohol concentration lends itself to the somewhat startling conclusion that in reality the "witness" against the defendant, the source of the crucial and incriminating evidence, is not the analyst but the machine itself. In *State v. Robbins*, 512 S.W. 2d 265 (Tenn. 1974), the court concluded as much in holding that the laboratory technician who analyzed a specimen of the defendant's breath for the purpose of determining its alcoholic concentration, was not a "witness" for purposes of confrontation. The court relied on the reasoning of *United States v. Beasley*, 438 F. 2d 1279 (6th Cir.), *cert. denied*, 404 U.S. 866, *reh. denied*, 404 U.S. 1006 (1971). In *Beasley*, the defendant contended that the Government's failure to call the technician who processed the defendant's latent palm print from a holdup note violated his Sixth Amendment right to confrontation. The Court responded that:

> [T]here could have been nothing accusatorial in the technician's testimony that he properly performed the mechanical test of "bringing out" the latent prints on the note paper; therefore he was not a witness "against" the Appellant, and the Sixth Amendment guarantee of confrontation and cross examination does not apply.

438 F. 2d at 1281.

In the present case, N.C.G.S. § 20-139.1(e1) permits the chemical analyst to attest by affidavit to certain objective facts which he or she has a statutory duty to record after complying with certain procedures and guidelines adopted by the Commission for Health Services. The analyst is at no time called upon to render an opinion or to draw conclusions. *See, e.g., State v. Watson*, 281 N.C. 221, 188 S.E. 2d 289, *cert. denied*, 409 U.S. 1043 (1972) (error to admit hearsay and conclusory statement as to cause of death pursuant to N.C.G.S. § 130-66). The analyst is required at the time of testing to record the alcohol concentration as indicated by the machine, the time of collection, the type of analysis performed, the type and status of his permit, and the date of the most recent preventive maintenance. N.C.G.S. § 20-139.1(e1)(1)-(5). The resulting information is precisely the sort of

evidence that the traditional business and public records exceptions to the hearsay rule intended to make admissible. " 'It cannot be thought that the Constitution was intended to close the door to the legislative department of government to establish new public records with like probative value.' " *Kreck v. Spalding*, 721 F. 2d 1229, 1243 (9th Cir. 1983) (quoting *Commonwealth v. Slavski*, 245 Mass. 405, 140 N.E. 465 (1923)). It bears repeating that the exceptions to the hearsay rule are not static, "but may be enlarged from time to time if there is no material departure from the reason of the general rule." *Id.* (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107 (1934)).

The significance of applying the rationale underlying the business and public records exceptions to the hearsay rule in the present case thus becomes obvious: first, the exceptions may be invoked irrespective of the availability of the maker of the document; and second, admissibility is not limited to non-crucial evidence. For purposes of admissibility, the critical question becomes one of reliability. Reliability, when translated into terms of the accused's Sixth Amendment right to confront and cross-examine witnesses, has been described as

> an inquiry into the likelihood that cross-examination of the declarant at trial could successfully call into question the declaration's apparent meaning or the declarant's sincerity, perception, or memory.

*Kreck v. Spalding*, 721 F. 2d at 1244 (citing to Congressional Research Service Library of Congress, *The Constitution of the United States of America—Analysis and Interpretation* 1214 (1973), explaining the rule in *Dutton v. Evans*).

It is unlikely in cases such as the case before us that cross-examination of the chemical analyst at trial could "successfully call into question the declaration's apparent meaning or the declarant's sincerity, perception or memory." Rather, to require every analyst to testify in such cases would be "unduly inconvenient and of small utility." *Dutton v. Evans*, 400 U.S. at 96 (Harlan, J. concurring). As Justice Harlan concluded in *Dutton*, "[i]f the hearsay exception involved in a given case is such as to commend itself to reasonable men, production of the declarant is likely to be difficult, unavailing, or pointless." *Id. See United States v. Yakobov*, 712 F. 2d 20 (2d Cir. 1983). When we consider the nature

of the evidence — a well recognized scientifically designed test for determining blood alcohol concentration — together with the duty of the analyst to follow carefully delineated guidelines in conducting the test and the objective nature of the facts recorded, both the need for *and* the utility of confrontation at trial in District Court appear minimal.

The State correctly points out that in District Court in North Carolina we have an educated and experienced fact-finder. The District Court Judge presides over hundreds of DWI cases each year. He hears testimony almost every day in numerous cases concerning analysis of alcohol concentration by different instruments. Cross-examination of analysts and all the arguments concerning whether the defendant had a blood alcohol concentration at a certain level have been made in court before him. The need for him to judge the demeanor of the analyst is greatly reduced. In addition, the testimony will be limited to the procedures set forth in N.C.G.S. § 20-139.1 and the rules of the Department of Human Resources. The demeanor of a witness in testifying whether he followed the rules is of limited value under this system.

Finally, we find persuasive the reasoning of *Kay v. United States*, 255 F. 2d 476 (4th Cir.), *cert. denied*, 358 U.S. 825 (1958), and *State v. Larochelle*, 112 N.H. 392, 297 A. 2d 223 (1972). In *Kay* the Court specifically held that the admission of a certificate which showed the alcohol concentration of an accused's blood sample as determined by chemical analysis did not deprive the accused, charged with reckless and drunken driving, of his federal or state constitutional right to confrontation. At the time that the blood test was administered in *Kay*, Virginia law did not require one so charged to submit to the chemical analysis. *See* Code Va. 1950 §§ 18-75, 18-75.1 to 75.3, 18.76 (repealed by Acts 1960, c. 358). Those statutory provisions have since been amended to require submission to chemical analysis. *See* Code Va. § 18.2-268 (Cum. Supp. 1984). Since the decision in *Kay*, Virginia has made it "unlawful for any person to drive or operate any motor vehicle . . . while such person has a blood alcohol concentration of 0.15. . . ." Code Va. § 18.2-266. However, *Kay* continues to be cited with approval both in Virginia and in other jurisdictions. *See, e.g., Dutton v. Evans*, 400 U.S. 74 (1970); *State v. Bauer*, 109 Wis. 2d 204, 325 N.W. 2d 857 (1982); *United States v. Yakobov*, 712 F. 2d

20 (2d Cir. 1983); *Kreck v. Spalding*, 721 F. 2d 1229 (9th Cir. 1983); *Robertson v. Cox*, 320 F. Supp. 900 (W.D. Va. 1970); *SAS v. State of Maryland*, 295 F. Supp. 389 (D. Md. 1969); *Howard v. United States*, 473 A. 2d 835 (D.C. App. 1984); *State v. Malsbury*, 186 N.J. Super. 91, 451 A. 2d 421 (1982); *People v. Hayes*, 470 N.Y.S. 2d 485 (1983).

In *Kay* the court recognized that the presumptions in the statute relating to alcoholic concentration in the blood were "not merely procedural," but "amount[ed] to a redefinition of the offense," much as the 0.10 blood alcohol concentration under N.C.G.S. § 20-138.1 now defines an offense of impaired driving. 255 F. 2d at 479. In addressing the defendant's Sixth Amendment argument, the court wrote:

> Admission of the certificate did not deprive the defendant of his right of confrontation by witnesses. Neither the Sixth Amendment to the Constitution of the United States nor Article I, Section 8 of the Constitution of Virginia can be said to have incorporated the rule against hearsay evidence, as understood at the time of their adoption. Each was intended to prevent the trial of criminal cases upon affidavits, not to serve as a rigid and inflexible barrier against the orderly development of reasonable and necessary exceptions to the hearsay rule.

> The power of Congress and of a state legislature to provide for the admission of evidence is not subject to any such arbitrary limitation as the defendant supposes. They may carve out a new exception to the hearsay rule, without violating constitutional rights, where there is reasonable necessity for it and where it is supported by an adequate basis for assurance that the evidence has those qualities of reliability and trustworthiness attributed to other evidence admissible under long established exceptions to the hearsay rule. See *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519; *United States v. Leathers*, 2 Cir., 135 F. 2d 507; *Matthews v. U.S.*, 5 Cir., 217 F. 2d 409.

> Certificates quite comparable to this one have been held admissible over objection upon similar constitutional grounds. See *Bracey v. Commonwealth*, 119 Va. 867, 89 S.E. 144; *State v. Torello*, 103 Conn. 511, 131 A. 429; *Commonwealth v. Slav-*

*ski,* 245 Mass. 405, 140 N.E. 465, 29 A.L.R. 281; *Commonwealth v. Stoler,* 259 Mass. 109, 156 N.E. 71. The alcoholic content of the blood, the evidentiary fact sought to be proved by the certificate may be accurately determined by well recognized chemical procedures. It is an objective fact, not a mere expression of opinion, and its proof by introduction of the certificate violates no constitutional right of the defendant.

255 F. 2d at 480-81.

In *State v. Larochelle,* 112 N.H. 392, 297 A. 2d 223 (1972), the Supreme Court of New Hampshire recognized the inherent reliability of various blood alcohol concentration tests and held that when "gathered and recorded pursuant to a public duty" and admitted in compliance with statutory requirements, the tests carry "sufficient characteristics of trustworthiness to be safely placed before the trier of fact without confrontation of the tester." *Id.* 397, 297 A. 2d at 226. *See State v. Dunsmore,* 112 N.H. 382, 297 A. 2d 230 (1972); *see also State v. King,* 187 Conn. 292, 445 A. 2d 901 (1982). The court in *Larochelle* cited as authority for its holding *Dutton v. Evans,* 400 U.S. 74 (1970) and *Kay v. United States,* 255 F. 2d 476 (4th Cir.), *cert. denied,* 358 U.S. 825 (1958). The court noted that the statute in question, RSA 262-A:69K (supp.), which provides that the official report of the test is deemed conclusive evidence of the test results unless the accused files notice requiring the attendance of the certified operator, indicated a "legislative reliance upon the common-law official written statements exception to the hearsay rule." *Id.* at 394, 297 A. 2d at 225. We reach a similar conclusion.

In reaching our result in the present case, we are aware of the contrary line of cases originating with the decision in *United States v. Oates,* 560 F. 2d 45 (2d Cir. 1977), particularly in light of the fact that our legislature has recently enacted the North Carolina Rules of Evidence which substantially track the Federal Rules of Evidence. *See* N.C.G.S. § 8C-1. In *Oates,* the court was asked to construe Rule 803(8) of the Federal Rules of Evidence which permits, as do our North Carolina rules, admitting into evidence all

—Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the

activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law-enforcement personnel, or (C) in civil cases and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

*Id.* at 66-67. The court held that exhibits purporting to be the official report and accompanying worksheet of a United States customs service chemist who analyzed a white powdery substance determined to be heroin were inadmissible under the "law enforcement official" exception to Rule 803(8). The court found that the evidence was "crucial" to the government's case to prove an essential element of the crime, and that the government therefore had to "bear the burden of producing extra-judicial declarants, or of demonstrating their genuine unavailability. . . ." *Id.* at 83. The court strongly intimated that the evidence would be inadmissible under any rule governing the admissibility of hearsay statements.

In response to the defendant's argument that *Oates* is controlling in this case, we first reiterate that although we have recognized our legislature's reliance on the traditional business records and public records exceptions to the hearsay rule in enacting N.C.G.S. § 20-139.1(e1), the statute represents a separate and distinct exception governed by the procedures followed by chemical analysts in impaired driving cases. Important among these is that the report be "*sworn to* and properly executed before an official authorized to administer oaths . . ." N.C.G.S. § 20-139.1(e1) (emphasis added). A recent amendment to N.C.G.S. § 20-139.1 indicates that the legislature was aware of the statutorily enacted Code of Evidence, particularly Rule 803(8). N.C.G.S. § 20-139.1(b4) was added effective July 6, 1984, and provides:

(b4) Introducing Routine Records Kept as Part of Breath-Testing Program.— In civil and criminal proceedings, any party may introduce, without further authentication, simulator logs and logs for other devices used to verify a breath-testing instrument, certificates and other records concerning the check of ampules and of simulator stock solution and the

stock solution used in any other equilibration device, preventive maintenance records, and other records that are routinely kept concerning the maintenance and operation of breath-taking instruments. In a criminal case, however, this subsection does not authorize the State to introduce records to prove the results of a chemical analysis of the defendant or of any validation test of the instrument that is conducted during that chemical analysis.

This provision clearly authorizes the introduction of reports, logs and certificates dealing with the procedures involved in the operation of the breathalyzer. Only the results of the test are excluded under this section. When those results meet the additional requirements of N.C.G.S. § 20-139.1(e1), however, they are admissible in District Court. Thus we view the (b4) amendment as a codification of the business records exception for the purposes of records and reports pertaining to the operation and maintenance of breath-testing equipment, which in no way affects a separate determination of whether the results of the tests would be admissible under N.C.G.S. § 20-139.1(e1) *when sworn to* and properly executed before an official authorized to administer oaths.

Furthermore, the reasoning of *Oates* has been questioned by the very court rendering the decision in that case. *See* Annot. 56 A.L.R. Fed. 168 § 5 (1982), *United States v. Cambindo Valencia*, 609 F. 2d 603 (2d Cir. 1979), *cert. denied*, 446 U.S. 940 (1980); *United States v. Grady*, 544 F. 2d 598 (2d Cir. 1976); *see also United States v. Neff*, 615 F. 2d 1235 (9th Cir.), *cert. denied*, 447 U.S. 925 (1980). More persuasive than *Oates* are two cases decided subsequent thereto — one concerning the admissibility of certificates of breathalyzer machine inspections, *State v. Smith*, 66 Or. App. 703, 675 P. 2d 510 (1984), and the second concerning the admissibility of the report of a chemical analysis of drugs pursuant to the Uniform Controlled Substances Act, *Howard v. United States*, 473 A. 2d 835 (D.C. App. 1984). In *Smith*, the defendant argued that the Oregon Evidence Code 803(8)(b) excluded the certificates of breathalyzer inspections because the individual conducting the inspection was "law enforcement personnel" and the certificates related to "matters observed" in connection with a "criminal case." The defendant relied on *Oates*. The Oregon court disagreed:

We conclude that, in adopting FRE 803(8)(B), Congress did not intend to change the common law rule allowing admission of public records of purely "ministerial observations." Rather, Congress intended to prevent prosecutors from attempting to prove their cases through police officers' reports of their observations during the investigation of crime. *United States v. Grady*, 544 F. 2d 598, 604 (2d Cir. 1976). We infer that the state legislature adopted OEC 803(8)(b) with the same intent.

66 Or. App. at ---, 675 P. 2d at 512. *See State v. Huggins*, 659 P. 2d 613 (Alaska App. 1982).

In *Howard v. United States*, 473 A. 2d 835 (D.C. App. 1984), the court was clearly aware of the decision in *Oates* but chose to follow a long line of cases including *In re Arthur*, 291 N.C. 640, 231 S.E. 2d 614 (1977), in holding that evidence consisting of the written reports of chemical analysis by the Drug Enforcement Agency was admissible under the business records exception to the hearsay rule. The court noted that the identity of the substance was determined by a well-recognized chemical procedure, the reports contained objective facts rather than expressions of opinion, and the chemists who conducted the tests did so routinely and generally did not have an interest in the outcome of trials. The court furthermore held that because the "[a]dmission of the reports into evidence [did] not preclude a defendant from inquiring into the reliability of the testing procedure or the qualifications of the chemists" in that he was "free to subpoena the reporting chemist without cost," the defendant was not "substantially disadvantaged by the government's failure to call the out-of-court declarant, and confrontation rights [were] effectively preserved." *Id.* 839.

We do not find the reasoning of *Oates* persuasive. Instead, we adopt the reasoning of the overwhelming majority of courts which have considered issues such as those raised by the defendant in this case. Accordingly, we hold that the right to confrontation guaranteed by the Sixth Amendment to the Constitution of the United States and Article I, §§ 19 and 23 of the Constitution of North Carolina is not violated by the procedure provided by N.C.G.S. § 20-139.1(e1) for admission into evidence of the affidavit of an analyst who does not testify at trial.

Even if it is assumed *arguendo* that the defendant has an absolute constitutional right to confront and cross-examine the analyst in cases such as the present case — an idea we reject — that right is fully protected at two levels. At the District Court level, the defendant is entitled to subpoena the analyst and examine him as an adverse witness, as on cross-examination. The defendant contends, however, that this unfairly shifts the burden to a defendant to prove non-compliance with some aspect of the procedure and does not "cure" the alleged constitutional error. We do not agree. Unless the information contained in the affidavit is challenged, it is presumed correct. *See State v. Larochelle*, 112 N.H. 392, 297 A. 2d 223 (1972). Failure to summon the analyst results in a waiver of any right to examine the analyst and contest the findings. *Id. See Howard v. United States*, 473 A. 2d 835 (D.C. App. 1984); *State v. Robbins*, 512 S.W. 2d 265 (Tenn. 1974) (defendant waived a "personal constitutional right" to confront a chemical analyst by "knowingly" failing to subpoena him); *see also Stroupe v. Commonwealth*, 215 Va. 243, 207 S.E. 2d 894 (1974) (with respect to the regularity of the test, the statute affords the defendant the right to prove noncompliance with test procedures and such evidence affects the weight rather than the admissibility of the certificate).

Finally, the defendant's right to confront the analyst is ultimately guaranteed by her absolute right to trial *de novo* in Superior Court. In this regard, the defendant argues that a violation of her constitutional rights in District Court cannot be cured merely because the case is subject to appeal and trial *de novo* in a higher court. She cites as authority *Ward v. Monroeville*, 409 U.S. 57 (1972). In *Ward* the Supreme Court rejected the argument that a violation of the accused's right to a neutral and detached judge in the first instance was rendered constitutionally acceptable where the accused was permitted to appeal for a trial *de novo*. We do not find *Ward* controlling in the present case.

In *State v. Spencer*, 276 N.C. 535, 173 S.E. 2d 765 (1970), this Court held that the right of an appeal from District Court resulting in a trial *de novo* in Superior Court effectively preserved the defendant's right to a trial by jury. We stated:

Infringement upon the constitutional right of these defendants to trial by jury is not apparent. Although initially

tried in the district court before the judge without a jury, defendants had, and exercised, an absolute right to a jury trial *de novo* in the superior court pursuant to G.S. 7A-288 (now G.S. 7A-290) and G.S. 15-177.1. It is established law in North Carolina that trial *de novo* in the superior court is a new trial from beginning to end, on both law and facts, disregarding completely the plea, trial, verdict and judgment below; and the superior court judgment entered upon conviction there is wholly independent of any judgment which was entered in the inferior court. "The fact that a right of appeal was given where the defendant was convicted in the lower court without the intervention of a jury has generally been regarded as a sufficient reason, in support of the validity of such trials without a jury in the inferior tribunal, as by appealing the defendant secures his right to a jury trial, in the Superior Court, and therefore cannot justly complain that he has been deprived of his constitutional right." *State v. Pulliam*, 184 N.C. 681, 114 S.E. 394. Accord: *State v. Norman*, 237 N.C. 205, 74 S.E. 2d 602.

*Id.* at 543, 173 S.E. 2d at 771. *See Ludwig v. Massachusetts*, 427 U.S. 618 (1976); *see also North v. Russell*, 427 U.S. 328 (1976) (accused, subject to possible imprisonment, is not denied due process when tried before a nonlawyer police court judge with a later trial *de novo* available under a State's two-tier court system).

The two-tier court system in North Carolina provides simple and speedy trials of misdemeanor cases in District Court, while at the same time insuring every defendant the absolute right to a full jury trial in Superior Court. In *Justices of Boston Municipal Court v. Lydon*, --- U.S. ---, 80 L.Ed. 2d 311 (1984), the Supreme Court, in the context of a double jeopardy issue, described the *de novo* hearing as follows:

>      While technically [the defendant] is "tried again," the second stage proceeding can be regarded as but an enlarged, fact—sensitive part of a single, continuous course of judicial proceedings during which, sooner or later, a defendant receives more—rather than less—of the process normally extended to criminal defendants in this nation.

*Id.* at ---, 80 L.Ed. 2d at 325. In his concurring opinion, Justice Brennan noted that the two-tier system provides a defendant

with two full opportunities to be acquitted *on the facts*, and commented that

> Perhaps more importantly, the defendant's realization throughout the first-tier trial that he has an absolute right to a second chance necessarily mitigates the sense of irrevocability that normally attends the factfinding stage of criminal proceedings, from beginning to end. For these reasons, the defendant's prospective knowledge of his entitlement to a second factfinding opportunity substantially diminishes the burden imposed by the first proceeding as well as the significance of a guilty verdict ending that proceeding.

*Id.* at ---, 80 L.Ed. 2d at 335. We believe that the language quoted above represents a recognition that for purposes of protecting certain constitutional rights, the two-tier system must frequently be viewed as providing a single continuous proceeding in which those rights are preserved for the "second factfinding opportunity." In the present case the defendant's opportunity to confront and cross-examine the chemical analyst is not foreclosed but appropriately preserved for a *de novo* trial before a jury in Superior Court.

Indeed, this Court has itself implicitly recognized that, where the opportunity to confront and cross-examine a chemical analyst is ultimately assured in Superior Court, a statute providing for the admission of the analyst's report in District Court is not unconstitutional. *In re Arthur*, 291 N.C. 640, 231 S.E. 2d 614 (1977). In *Arthur* we considered whether N.C.G.S. § 90-95(g) applied to delinquency proceedings. The statute provided the basis for the admission into evidence of a written report of an S.B.I. laboratory analysis which concluded that certain "green vegetable material" found in the defendant's possession was marijuana. The chemical analyst did not testify at the defendant's trial in District Court. The statute authorized the admission of such reports "without further authentication in all proceedings in the district court division of the General Court of Justice. . . ." Because in delinquency proceedings "the district court [was] the ultimate fact-finding forum," and the juvenile was afforded no opportunity for a trial *de novo* in Superior Court, we held that N.C.G.S. § 90-95(g) did not apply. *Id.* at 643, 231 S.E. 2d at 617. In construing the import

of the statute we stated that we were "confident that the legislature at the time of its enactment had in mind the great majority of district court criminal proceedings . . . in which, in misdemeanor cases, an *appeal of right to the superior court lies for a trial de novo*." 291 N.C. at 642-43, 231 S.E. 2d at 616 (emphasis added). We noted further that:

> [t]he policy underlying General Statute 90-95(g) is obviously one of convenience to the state. By permitting the written report of the chemical analysis to serve as evidence of the truth of the analysis itself the statute relieves busy SBI and other chemists from having to spend time traveling to and from courthouses throughout the state for the purpose of testifying.

*Id.* at 643, 231 S.E. 2d at 616.

Based upon the foregoing authority and reasoning we conclude that even when it is assumed *arguendo* that the defendant has a constitutional right to confront the chemical analyst who conducted the breathalyzer test pursuant to N.C.G.S. § 20-139.1, the right is guaranteed during the *de novo* trial on appeal to Superior Court which offers the second factfinding opportunity in the continuous proceeding provided by our two-tier court system. Since N.C.G.S. § 20-139.1(e1) states that the defendant additionally may subpoena the analyst and examine him as an adverse witness in any hearing or trial in District Court, the defendant in fact is given an easy method for confronting the analyst at each factfinding opportunity in our two-tier system. Far from denying the defendant the opportunity to confront and cross-examine the analyst, the statute grants an *additional opportunity* for confrontation and cross-examination. It violates neither the Sixth Amendment to the Constitution of the United States nor the Constitution of North Carolina. The order of the Superior Court, Mecklenburg County, which is the subject of this appeal is

Affirmed.

Justice MARTIN dissenting.

I respectfully dissent. The recent efforts of the Governor and General Assembly of North Carolina to improve highway safety are indeed laudatory. It is essential to the safety of the public

that the dangers of drinking and driving be reduced and eliminated. However, even in such praiseworthy pursuits, constitutional principles must be preserved. *See Coolidge v. New Hampshire,* 403 U.S. 443, 29 L.Ed. 2d 564 (1971).

I find that the use of the affidavit as evidence pursuant to N.C.G.S. 20-139.1(e1) violates the confrontation clause of the federal and state constitutions. U.S. Const. amend. VI; N.C. Const. art. I, § 23.

A brief look at the historical reasons for the confrontation clause is helpful. At the common law in the seventeenth century it was a common practice to try criminal defendants on evidence which consisted solely of ex parte affidavits or depositions, thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of the fact. The confrontation clause was included in the federal and state constitutions for the purpose of preventing this method of trial. *California v. Green,* 399 U.S. 149, 26 L.Ed. 2d 489 (1970). Among the purposes of the confrontation clause are: (1) to ensure that the witness will give his testimony under oath, impressing upon him the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury, (2) requiring the witness to submit to cross-examination, certainly the greatest method of discovering the truth, and (3) to allow the fact finder to observe the demeanor of the witness and determine the credibility to be given to his testimony. *Id.* The famous case of the trial of Sir Walter Raleigh for treason in 1603 gave strong impetus to the development of the confrontation clause. The crucial evidence against Raleigh consisted of a series of statements by one Cobham, charging Raleigh with complicity in a plot to seize the English throne. Raleigh demanded that Cobham be produced to testify face to face at his trial. This request was denied. Subsequently, after a long period of incarceration in the Tower of London, Raleigh was executed.

The right of confrontation is broader than the right of cross-examination. A defendant has a right to face his accusers and to have the witnesses against him appear before the fact finder and give their testimony under oath, as well as to be subject to cross-examination in the event that the defendant desires to do so.

These means of testing accuracy are so important that the absence of proper confrontation at trial "calls into question the ultimate 'integrity of the fact-finding process.'" *Chambers v. Mississippi*, 410 U.S. 284, 295, 35 L.Ed. 2d 297, 93 S.Ct. 1038 (1973), quoting *Berger v. California*, 393 U.S. 314, 315, 21 L.Ed. 2d 508, 89 S.Ct. 540 (1969).

*Ohio v. Roberts*, 448 U.S. 56, 64, 65 L.Ed. 2d 597, 606 (1980). The primary objective of the confrontation clause is to prevent the use of depositions or ex parte affidavits in criminal cases in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity not only of testing the recollection and sifting the conscience of the witness, but also of compelling him to stand face to face with members of the jury in order that they may look at him and judge him by his demeanor upon the stand and the manner in which he gives his testimony to determine what weight and credit they should give to the same. *Mattox v. United States*, 156 U.S. 237, 39 L.Ed. 409 (1895). This cannot be done when the witness comes before the court in the garb of an affidavit.

Today one cannot doubt the fundamental nature of the right of confrontation. Along with the right to be represented by counsel, the right to present evidence, and the right to an impartial judiciary, the right of confrontation lies at the very core and foundation of the criminal trial process. These are the hallmarks of a fair criminal trial. While the legislature may adopt reasonable rules of evidence, it may not encroach upon fundamental constitutional guarantees. The legislature has the power to alter or create rules of evidence, except for rules of evidence which have been expressly sanctioned by the constitution, such as the privilege against self-incrimination and the right of confrontation and cross-examination. *State v. Scoggin*, 236 N.C. 19, 72 S.E. 2d 54 (1952). There are occasions when the confrontation rule must yield to exceptional circumstances. Principally, they are when the witness is truly unavailable because of death or other similarly compelling circumstances and when there has been provided sufficient indicia of reliability of the evidence that would afford the trier of fact an opportunity for evaluating the truth of the evidence. *Ohio v. Roberts*, 448 U.S. 56, 65 L.Ed. 2d 597; *Mattox v. United States*, 156 U.S. 237, 39 L.Ed. 409. But the confrontation clause requires the state to produce any *available* witness whose declarations it

seeks to use in a criminal trial. *California v. Green*, 399 U.S. 149, 174, 26 L.Ed. 2d 489, 506 (Justice Harlan concurring). Also, if the evidence to be offered does not address an essential issue in the case, there is less reason to rigidly adhere to the requirements of the confrontation clause. In other words, such an exception would not be likely to result in prejudicial error.

Turning now to the majority opinion, it attempts to justify the result reached by first asserting that what the legislature has done is to create a statutory exception to the hearsay rule. As stated above, the legislature has the authority to so do, provided it does not thereby trample upon constitutional guarantees such as the right to be represented by counsel or the rights under the confrontation clause. *State v. Scoggin*, 236 N.C. 19, 72 S.E. 2d 54. The issue at bar is not a simple one of whether the challenged evidence is admissible as an exception to the hearsay rule. It is a constitutional issue.

The majority analyzes the issue as being similar to the hearsay exception for business and public records. The affidavit as allowed by the challenged statute is not a business or public record within the meaning of that exception to the hearsay rule. While it is true that evidence in certificate or affidavit form concerning the qualifications of a breathalyzer operator, the inspection and testing of such machines, and the testing of the ampules and other materials used in the test have been admitted into evidence as an exception to the hearsay rule on the basis of business or public records, that evidence is substantially different from an affidavit which purports to show the essential gravamen of the charged offense, namely, the alcohol concentration of the defendant. N.C. Gen. Stat. § 20-138.1(a)(2) (1983). The above referred to exceptions concern themselves with things done in the ordinary course of maintaining the equipment and maintaining the skill of the operator of the equipment, and those records are entered in the normal course of business. They are made ante litem motam, that is, when the declarant had no motive to distort the truth in the keeping of these records. Specific prosecution against a particular defendant is not in mind at the time these records are made.

However, the affidavit in the present case was prepared for the specific purpose of being used by the state in the prosecution

and trial of this defendant. Therefore, there is clearly reason to determine that such evidence does not bear the indicia of reliability required of all exceptions to the hearsay rule: the person preparing the affidavit is not preparing business records from a position of neutrality with respect to prosecution of criminal defendants; instead, he is an agent of the state whose accuracy in performing the incriminating test and recording its results deserves the most rigorous examination. *See Ohio v. Roberts*, 448 U.S. 56, 65 L.Ed. 2d 597.

The majority argues that the equipment used for the purpose of performing these tests is extremely accurate and that there is very little opportunity for the operator to influence the result of the test. However, critical evidence of a key element of an offense, such as the affidavit in this case, should never be admissible without compliance with the confrontation clause, regardless of how reliable and accurate the evidence appears to be. Although the operator has a statutory duty to prepare the affidavit in question, the fact that it is required by statute does not cure the constitutional defect. Additionally, even though required by statute, that does not guarantee the accuracy or trustworthiness of the affidavit. The majority would hold that if the evidence is reliable, then it should be competent, regardless of the confrontation clause. This appears to be putting the cart before the pony, because it is the process of confrontation that makes the evidence reliable.

The majority says that the district court judge is an educated and experienced fact finder. This of course may very well be true in some cases, but in others a defendant can just as easily be tried the first day that a district court judge is upon the bench. This seems to me to be a slender reed upon which to establish an exception to a constitutional requirement.

The majority relies upon *Kay v. United States*, 255 F. 2d 476 (4th Cir.), *cert. denied*, 358 U.S. 825 (1958). It must be remembered that in *Kay* the results of the blood alcohol analysis were only *evidence* of the defendant's guilt of driving under the influence. In the present prosecution, the *results* of the analysis for alcohol constitute the very crucial element of the offense to be proved: if the defendant has a alcohol concentration greater than the statutory maximum, he is guilty of the offense. This was not so in

*Kay.* This fact is a powerful distinction between the two cases. The evidence in the *Kay* fact situation comes closer to being a peripheral or nonessential factor of the offense, rather than being the central issue in the case as is true in the present appeal. I find the reasoning in *United States v. Oates*, 560 F. 2d 45 (2d Cir. 1977), to be more persuasive. In that case the Court held that where the evidence was necessary to prove an essential element of the offense, the government had the burden to produce the witnesses or to demonstrate that they were in truth unavailable to testify. The affidavit in question before us is not one based upon purely ministerial observations, but is one designed specifically to prosecute and convict the defendant in the very case in question.

Next, the majority argues that because the statute grants the defendant the right to call the operator as an adverse witness, it serves as a saving clause for the statute. This part of the statute does not grant the defendant anything new. Prior to the statute he had a constitutional right to call the operator as a witness. Moreover, allowing the defendant to call the operator and examine him as an adverse witness does not solve the constitutional dilemma. The state has the burden of proving all of the elements of the offense. *In re Winship*, 397 U.S. 358, 25 L.Ed. 2d 368 (1970). Procedures which shift the burden of persuasion of an element of the offense to the defendant are constitutionally impermissible. *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed. 2d 508 (1975). Requiring the defendant to produce the witness, who will provide critical evidence of the essential element of the offense, so as to safeguard the defendant's right to confront that very witness surely offends due process standards. Further, the statute apparently contemplates the defendant calling the operator as a witness after the state has introduced the affidavit into evidence. The statute expressly states that the affidavit, if properly executed, is admissible in evidence without further authentication. This means that when the defendant calls the operator for the purpose of cross-examining him concerning the facts surrounding the alcohol level test, he is doing so after the state has established a prima facie case. The evidence adduced by such cross-examination would not go to the admissibility of the affidavit in question but would simply go to the credibility of the facts stated in the affidavit. By the time the defendant is allowed to begin the

race, the state has already crossed the finish line, and defendant is faced with the unpleasant duty of attempting to demonstrate to the trier of fact, the judge, that he should give little weight to the affidavit in deciding the factual issues.

If the legislature had made a provision in the statute that upon motion the defendant could call the operator as a witness in a voir dire hearing to determine the admissibility of the affidavit, the constitutional issue with respect to confrontation would not be so pivotal. This would allow a defendant to attack the admissibility of the affidavit and the test results before they were allowed into evidence, and the calling of the operator would be a meaningful exercise of the defendant's right of cross-examination and confrontation. However, this the General Assembly did not do, leaving the defendant with the meaningless cross-examination of the operator after the state has made out its case against the defendant by the admission of the affidavit.

The majority then seeks to justify its holding by reciting that the defendant has a right to a trial de novo before a jury in the superior court.[1] This, of course, is true. To me, this is simply a statement that constitutional rights are not guaranteed in the district court and that this is not error because one can assert them on trial de novo in the superior court. As we all know, practically all criminal cases that are tried in the district court are finally disposed of in that court. Only a small percentage are appealed to the superior court for trial de novo. Not all defendants have the financial means to bring their cases to the superior court, and if the expense of such trials is placed upon the state, additional financial burdens will be lodged against the taxpayers. This could be easily avoided by protecting defendants' constitutional rights at the trial of first instance.

I find the case of *Ward v. Monroeville*, 409 U.S. 57, 34 L.Ed. 2d 267 (1972), both instructive and persuasive. In *Ward* the defendant was tried in the first instance by a mayor who had inconsistent responsibilities for revenue production and law en-

1. Whether the affidavit is admissible as evidence in the superior court is an open question. However, if the majority's position that the confrontation clause is not violated by the use of the affidavit in the district court is sound, there appears to be no reason why the affidavit, properly authenticated, would not be admissible in the superior court.

forcement. The defendant contended that this violated his due process rights, particularly the guarantee of a trial before a disinterested and impartial judicial officer. In that case the Supreme Court held that even though the defendant was entitled to an appeal as a matter of right and a trial de novo, an accused is entitled to a neutral and detached judge in the first instance and the trial by the mayor was not constitutionally acceptable. The *Ward* Court's holding is very appropriate here in that although the state eventually offers the defendant a fair trial, that does not mean that his initial trial can be constitutionally defective. The right of confrontation is a core element of a fair trial and, as *Ward* demonstrates, a trial procedure containing a constitutional defect cannot stand. The principle in *Ward* is also distinguishable from those cases that hold that the right to trial by jury is not violated where a defendant has a de novo right of appeal to obtain a trial by jury, the difference being that a defendant can have a fair trial without a jury. A judge can give a defendant just as fair a trial as a defendant can receive when he is tried by a jury, but where a fundamental right of a defendant is violated in a trial, whether by jury trial or bench trial, that violation cannot be cured by a trial de novo. It is the very fairness issue which has been violated in the initial trial and which cannot be cured by subsequent retrial. For these reasons, I find *State v. Spencer*, 276 N.C. 535, 173 S.E. 2d 765 (1970), and *Ludwig v. Massachusetts*, 427 U.S. 618, 49 L.Ed. 2d 732 (1976), to be distinguishable. Both of those cases deal with the right of trial de novo for the purpose of obtaining a jury trial. In neither of these cases is it argued or contended that the defendant did not receive a fair trial at his trial in the inferior court. Defendant simply argued that he was entitled to a jury trial in the court of first instance. In this regard the majority cites *In re Arthur*, 291 N.C. 640, 231 S.E. 2d 614 (1977). This case concerned delinquency proceedings and was a case of statutory construction. *Arthur* did not reach the constitutional issue with which this Court is now faced. In *Arthur* the Court, through Justice Exum, expressly stated that no opinion as to the correctness of the constitutional arguments was made by the Court, the case being decided upon statutory issues rather than constitutional principles.

Further support for this dissent is found in *Dist. of Columbia v. Clawans*, 300 U.S. 617, 81 L.Ed. 843 (1937), where defendant

was charged with an offense triable at the first instance without a jury. The Supreme Court held that as the offense was punishable by not more than ninety days, it was a "petty" offense and could be tried without a jury. However, the Court further held that defendant's conviction must be reversed because the trial court had prejudicially restricted defendant's constitutional right of confrontation. Where fundamental rights affect the fairness of a trial, they must be safeguarded at the initial trial.

Finally, I find that *State v. Watson*, 281 N.C. 221, 188 S.E. 2d 289, *cert. denied*, 409 U.S. 1043 (1972), strongly supports a defendant's right of confrontation. *Watson* was a case involving the use in evidence of an authenticated copy of a death certificate for the purpose of proving an essential element of the homicide charge, the cause of death. In discussing the defendant's constitutional right of confrontation with respect to the North Carolina and federal constitutions, this Court, through Justice (now Chief Justice) Branch, stated:

> The right of confrontation confirms the common-law rule that, in criminal trials, the witnesses must be present and subject to cross-examination. . . . The right of confrontation is an absolute right rather than a privilege, and it must be afforded an accused not only in form but in substance.

*Id.* at 230, 188 S.E. 2d at 294 (citations omitted). This statement of principle applies with equal fervor in the present appeal. I find N.C.G.S. 20-139.1(e1), in its present form, to be a violation of the defendant's constitutional right of confrontation.

Justices EXUM and FRYE join in this dissenting opinion.